

NUMBER 13-10-00371-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

GARY WAYNE HARTON,                                                          Appellant,

v.

FIRST VICTORIA NATIONAL BANK,                                        Appellee.

**On appeal from the 135th District Court
of Jackson County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Rodriguez**

Appellant Gary Wayne Harton appeals from the trial court's judgment notwithstanding the verdict (JNOV) entered in favor of appellee First Victoria National Bank (First Victoria). The underlying lawsuit involved six separate commercial loan agreements on which Harton was either the maker of the note or the individual guarantor

for Jackson County Equipment Company (JCEC). By three issues, Harton contends that: (1) First Victoria released its claims against him when it settled its claims in bankruptcy; and, in the alternative, (2-3) First Victoria is not entitled to judgment for any amount in excess of the damages and attorney's fees awarded by the jury. We affirm, in part, as to damages, and reverse and remand, in part, for reinstatement of the jury's award of attorney's fees.

## I. BACKGROUND[1]

In 2008, Harton signed a series of promissory notes, two individually and four as guarantor for JCEC, a farm equipment company owned and managed by Harton. The debts were secured by pieces of agricultural equipment. Harton subsequently defaulted on the notes. First Victoria brought suit against Harton to recover the alleged deficiencies on the notes that were in default. In September 2009, the trial court entered a partial summary judgment on liability in favor of First Victoria.

While the suit on damages was pending, JCEC filed for Chapter 7 bankruptcy protection. Another creditor of JCEC initiated an adversary proceeding within the bankruptcy proceeding. First Victoria intervened, claiming that it had superior rights in the collateral seized by yet another creditor, Case New Holland (Case). Subsequently, the bankruptcy court entered an order severing all claims pending in the adversary proceeding against Harton, individually, and remanding those claims to state district court. The remaining parties went to mediation, and on January 26, 2010, a Binding

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

2

Settlement Agreement (Agreement) was signed by Commercial State Bank of El Campo, CNH Capital America, LLC (Case's successor), First Victoria, and Lowell Cage as Chapter 7 Trustee for JCEC. On March 10, 2010, the bankruptcy court's Amended Order Authorizing Compromise, issued pursuant to the Agreement, ordered, among other things, that Case pay First Victoria $100,000.

On April 9, 2010, Harton filed his second amended original answer, pleading, among other things, the affirmative defense of release, a defense premised on the Agreement. One month later, the case was tried to a jury where the only questions at issue at trial were the amounts owed by Harton pursuant to the notes and guaranty agreements and attorney's fees.

At the close of the evidence, Harton moved for an instructed verdict based on the release provision in the Agreement. The trial court denied his motion and submitted First Victoria's claim for damages and attorney's fees. The jury found damages in the amount of $1,390.50, $14,220, $0.00, and $59,000 for Notes #1 through #4, respectively.[2] The jury also awarded attorney's fees to First Victoria, in the amount of $2500.

After the verdict was received, First Victoria filed a motion to disregard the jury's findings with respect to Notes #1, #2, #3, and #4, and the attorney's fees and for JNOV. Harton filed a motion for judgment and a reply to First Victoria's motion. In his reply, Harton asked the trial court to render a take-nothing judgment against First Victoria because the evidence proved, as a matter of law, that it released its claims against him.

---

[2] The jury also found Harton owed First Victoria $70,067.36 on Note #5 and $24,582.85 on Note #6. With respect to those findings, First Victoria requested that the trial court enter judgment in conformity with the answers given by the jury, and after urging his defense of release, Harton, in the alternative, moved for judgment on the verdict. On appeal, subject to his release argument, Harton does not challenge these findings.

3

Alternatively, Harton moved for judgment on the verdict. The trial court granted First Victoria's motion to disregard and for JNOV and denied Harton's motion. This appeal followed.

## II. ANALYSIS

### A. Release

By his first issue, Harton contends that the trial court improperly failed to enforce the Agreement's release provision. This complaint challenges the trial court's denial of Harton's motion for instructed verdict and his post-trial motion, which we construe as a motion for JNOV.

Harton contends that First Victoria released its claims against him when it signed the Agreement. He argues that not only did the Agreement resolve First Victoria's claims against Case's successor, it also unambiguously released all of First Victoria's claims against the "agents, employees, officers, directors, [and] shareholders" of all other parties, one of which was JCEC. As the owner and operator of JCEC, Harton claims that he was released from liability by First Victoria on the notes that are the subject of the suit. In response, First Victoria asserts that Harton's liability on the notes and guaranties was not released because (1) the release language in the Agreement limited its scope to the issues settled between the creditors in the adversary proceeding and Harton's individual liability on his unpaid debts was not part of the subject matter of that proceeding, and (2) Harton was not an intended third-party beneficiary of the agreement. We agree.

### 1. Standard of Review

"A court should grant a motion for judgment notwithstanding the verdict if a legal

4

principle prevents a party from prevailing on its claim." *UPS v. Tasdemiroglu*, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th] Dist. 2000, pet. denied) (citing *ARCO v. Misty Prods., Inc.*, 820 S.W.2d 414, 420-21 (Tex. App.—Houston [14th Dist.] 1991, writ denied)). In this case, Harton argues that the trial court should have granted his motion for instructed verdict and his motion for JNOV because his defense of release prevented First Victoria from prevailing on its claim for damages.

In reviewing the trial court's instructed verdict or its JNOV, we conduct a legal sufficiency analysis of the evidence, the same test applied to appellate no-evidence challenges. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). Applying the no-evidence standard, we consider the evidence in the light most favorable to the jury's verdict and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003) (per curiam). We credit favorable evidence if a reasonable juror could and disregard contrary evidence unless a reasonable juror could not. *Tanner*, 289 S.W.3d at 830.

## 2. Applicable Law

A release is a complete bar to a later action based on matters covered in the release. *Schomburg v. TRW Vehicle Safety Sys., Inc.*, 242 S.W.3d 911, 913 (Tex. App.—Dallas 2008, pet. denied) (op. on reh'g) (citing *Deer Creek Ltd. v. N. Am. Mortgage Co.*, 792 S.W.2d 198, 201 (Tex. App.—Dallas 1990, no writ)). Releases are only effective against named parties to the release or parties described with such particularity that their identity is not in doubt. *Mem'l Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 434 (Tex.

5

1997) (per curiam) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420 (Tex. 1984)). Moreover, the intention of the contracting parties is controlling when determining whether a third party can enforce a contract. *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). And the intention to contract or confer a benefit to a third party must be clearly and fully spelled out in order to show the contracting parties entered into the contract directly for the third parties' benefit. *Dallas Firefighters Ass'n, v. Booth Research Group, Inc.*, 156 S.W.3d 188, 192-93 (Tex. App.—Dallas 2005, pet. denied); *see First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 929 (Tex. App.—Dallas, 2005, pet. ref'd) (explaining that if there is a reasonable doubt as to the intent of the contracting parties to confer a direct benefit on the third party, then the third-party beneficiary claim must fail).

We determine the scope of a release in the same way we review other contracts. *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). That is, we ascertain and give effect to the parties' intentions as expressed in the document by examining the contract as a whole, evaluating the meaning of each provision. *Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam). Considering the entire document, we attempt to harmonize and give effect to all provisions by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank*, 165 S.W.3d at 311-12. It is appropriate to construe the release in light of the facts and surrounding circumstances as shown by the record. *Houston Oilers, Inc., v. Floyd*, 518 S.W.2d 836, 838 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). "If, after the pertinent

6

rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law." *Frost Nat'l Bank*, 165 S.W.3d at 312.

## 3. Discussion

The Agreement is captioned with the style of the adversary proceeding brought within JCEC's bankruptcy proceeding. Neither party argues that the Agreement is ambiguous, and we agree. Therefore, we will construe it as a matter of law. *See id.*

Paragraph 3 of the Agreement set out the following release language:

> The parties agree to release, indemnify (by, through or under), discharge and forever hold the other harmless from all claims, demands or suits, known or unknown, fixed or contingent, liquidated or unliquidated, whether or not asserted in the above case, as of this date arising from or related to the events and transactions which are the subject matter of this case.

> This mutual release runs to the benefit of all attorneys, agents, employees, officers, directors, shareholders, parents, affiliates, subsidiaries and partners of the parties. "Party" as used in this release includes all named parties to this case plus all signatories hereto, as well as all related entities of the parties.

Based on this language, the Agreement specifically released JCEC, a named party, and its signatory, the Trustee for JCEC's Chapter 7 bankruptcy. It also released Harton from liability in his capacity, if any, as a JCEC employee, officer, director, and shareholder. Harton contends, however, that the Agreement also released him in his individual capacity as a maker of or guarantor on the notes at issue in this case. We disagree.

Harton was, at one time, a party defendant in the adversary proceeding. Prior to the parties entering into the Agreement, however, First Victoria's claims against Harton, in

7

his individual capacity, were severed from the adversary proceeding and remanded to state district court. When the Agreement was signed, Harton was neither a named party nor a signatory. And although "employees, officers, directors, shareholders, parents, affiliates, subsidiaries and partners of the parties" were released, the Agreement did not specifically release guarantors of notes or makers of any debt owed to the creditors. Neither did the Agreement clearly nor fully spell out the parties' intent to confer a benefit to Harton as a third-party guarantor on or maker of such debt. *See Dallas Firefighters Ass'n*, 156 S.W.3d at 192-93.

In addition, the release was limited to "claims, demands or suits . . . arising from or related to the events and transactions *which are the subject matter of this case*." (Emphasis added.) By this language, the Agreement limited the release to the subject matter of the adversary proceeding—i.e., the creditors' lien priority dispute. Therefore, after the severance of the claims against Harton, in his individual capacity, the only issue that remained to be settled in the adversary proceeding was the secured creditors' competing claims to the collateral and to the proceeds from the sale of the collateral. The scope of the issues covered by the Agreement did not include Harton's individual liability on his unpaid debt to First Victoria.

Therefore, we conclude that the evidence did not conclusively prove, as a matter of law, Harton's release defense to First Victoria's cause of action, and thus, the trial court did not err in denying Harton's motion for instructed verdict and his motion for JNOV. *See Tanner*, 289 S.W.3d at 830; *City of Keller*, 168 S.W.3d at 822. We overrule Harton's first issue.

8

## B.  Damages

By his second issue, Harton contends that First Victoria was not entitled to JNOV on amounts due under the notes because First Victoria did not show that it disposed of all collateral in a commercially reasonable manner and, thus, did not establish the greater dollar amounts as a matter of law.  Harton also claims that First Victoria did not prove damages, as a matter of law, in excess of those found by the jury.  In response, First Victoria asserts that Harton waived the issue of commercial reasonableness of the disposition of the collateral and that the jury's findings were not based on the evidence presented at trial.

### 1.  Standard of Review

The district court may disregard a jury's verdict and render JNOV if no evidence supports the jury's findings or if a directed verdict would have been proper.  *See Tiller*, 121 S.W.3d at 713; *Brown v. Bank of Galveston*, 963 S.W.2d 511, 513 (Tex. 1998); *see also* TEX. R. CIV. P. 301.  As set out above, we review a challenge to a JNOV under a no-evidence standard.  *See Tanner*, 289 S.W.3d at 830; *City of Keller*, 168 S.W.3d at 823.  Specific as to damages, the district court may render JNOV and substitute its own judgment only if the evidence proves the damages sought by the JNOV movant conclusively.  *State v. Huffstutler*, 871 S.W.2d 955, 960-61 (Tex. App.—Austin 1994, no writ); *see City of Keller*, 168 S.W.3d at 810.

### 2.  Applicable Law

"Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable."  TEX. BUS. & COMM. CODE

9

ANN. § 9.610(b) (West 2011). The debtor may put the commercial reasonableness of the creditor's disposition at issue utilizing the trial court's rules of pleading and practice. *Id.* § 9.626 cmt. 3. (West 2011); *see* TEX. R. CIV. P. 45(b) (requiring that a defendant's pleadings state in plain and concise language the grounds for any defense alleged). "If the secured party's compliance is placed in issue, the secured party has the burden of establishing that the . . . disposition . . . was" commercially reasonable. TEX. BUS. & COMM. CODE ANN. § 9.626(a)(2).

The commercial reasonableness of a sale is a question of fact to be determined by the jury. *Gordon & Assocs., Inc. v. Cullen Bank/City West, N.A.,* 880 S.W.2d 93, 96 (Tex. App.—Corpus Christi 1994, no writ). If no element of an available defense is submitted to the jury or requested by the defendant, that defense is waived and cannot be asserted on appeal. TEX. R. CIV. P. 279; *Gulf State Utils. Co. v. Low*, 79 S.W.3d 561, 565 (Tex. 2002); *Harmes v. Arklatex Corp.*, 615 S.W.2d 177, 179 (Tex. 1981).

## 2. Discussion

### a. Waiver of Commercial Reasonableness Issue

Assuming, without deciding, that Harton's trial pleading placed the disposition of the collateral in issue, there is no record that Harton requested a jury instruction or a jury question regarding the commercial reasonableness of First Victoria's disposition of the collateral. By not requesting inclusion of this issue in the jury charge, Harton has waived any issue challenging the commercial reasonableness of First Victoria's disposition of the collateral. *See* TEX. R. CIV. P. 279; *Gulf State Utils. Co.,* 79 S.W.3d at 565; *Gordon & Assocs.,* 880 S.W.2d at 96.

### b. Evidence Establishing the Amount of Damages

The record before this Court establishes that First Victoria's representatives testified to the dollar amount owed on each of the notes at issue. They testified that $100,000 from Case through the adversary proceeding, an additional $37,000 from Harton, and all proceeds from First Victoria's sale of collateral had been applied to the debt. The representatives' testimony and documentary evidence established that, immediately before trial, the balances owed by Harton on Notes #1, #2, #3, and #4 were $117,265.63, $194,220, $21,580, and $133,610.43, respectively. These dollar amounts were neither questioned nor contradicted through evidence offered by Harton.

Even considering the evidence in the light most favorable to the jury's verdict and indulging every reasonable inference that would support it, we conclude that the evidence at trial conclusively established the amount of damages granted in the trial court's judgment. *See Tiller*, 121 S.W.3d at 713; *Brown*, 963 S.W.2d at 513; *see also City of Keller*, 168 S.W.3d at 810, 822. Therefore, the trial court's JNOV regarding damages was proper. We overrule Harton's second issue.

### C. Attorney's Fees

By his third issue, Harton contends that First Victoria did not prove, as a matter of law, that it expended more in attorney's fees than found by the jury. He asserts that there was no direct testimony on the following jury issue: "What sum of money, if any, . . . would fairly and reasonably compensate First Victoria National Bank for their reasonable and necessary attorneys' fees expended in the collection of the debts claimed against . . . Harton."

11

### 1. Standard of Review

Again, we will review the trial court's JNOV, this time on the award of attorney's fees, under the no-evidence standard. *See Tanner*, 289 S.W.3d at 830; *City of Keller*, 168 S.W.3d at 823.

### 2. Applicable Law

Generally, the testimony of an interested witness, though not contradicted, does nothing more than raise a fact issue to be determined by the jury. *Cochran v. Wool Growers Cent. Storage Co.*, 140 Tex. 184, 191, 166 S.W.2d 904, 908 (1942); *see Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010). However, there is a long-standing exception to this general rule, which provides that the uncontroverted testimony of an interested witness will establish attorney's fees as reasonable and necessary as a matter of law if: (1) the testimony could readily be contradicted if untrue; (2) the testimony is clear, direct and positive; and (3) there are no circumstances that tend to discredit or impeach the testimony. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009); *Rosenbalt v. Freedom Life Ins. Co. of Am.*, 240 S.W.3d 315, 321 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (interpreting and applying *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (per curiam)).

### 3. Discussion

First Victoria's counsel, an interested witness, was the only witness who provided testimony about attorney's fees in this case and their reasonableness. After testifying as to his experience and expertise, counsel explained that he was familiar with the fees his firm had charged First Victoria in connection with this lawsuit. Although his firm's billing

records were not admitted into evidence, counsel testified that he had reviewed those records. When asked if he had an opinion as to what a reasonable fee for the services rendered by his law firm to First Victoria would be, counsel responded as follows:

> Yes, sir. Keep in mind that there has been, there have been three different matters going on here. One is a collection case against Mr. Harton based on a lawsuit on his guaranty. Another is the bankruptcy in Chapter 11, which later became a Chapter 7 liquidation of Jackson County Equipment Company. Then there's another lawsuit in which First Victoria National Bank participated with all the other creditors in the bankruptcy court, which was basically a lien dispute fight, so we're talking about three different things going on all at the same time. . . . Exclusive of this present proceeding, $20,000 would be an appropriate fee."

Counsel then testified that a reasonable fee for trial preparation and for appearance at trial in this case would be $5000.

The jury found that First Victoria's reasonable and necessary attorney's fees expended in the collection of the debts claimed against Harton were $2500. The trial court, however, entered JNOV for attorney's fees in the amount of $25,000.

The only testimony regarding attorney's fees was provided by an interested witness. Under the general rule, that would do nothing more than raise a fact issue to be determined by the jury. *See Cochran*, 166 S.W.2d at 908. First Victoria argues that the general rule does not apply. Rather, it contends that the exception applies because counsel's testimony was "clear, direct, and positive" and, therefore, established attorney's fees as reasonable and necessary as a matter of law. *See Rosenbalt*, 240 S.W.3d at 321. We disagree.

Excluding fees for trial preparation and the trial itself, counsel testified that "$20,000 would be an appropriate fee." Counsel's opinion was prefaced by his

13

testimony that one must "[k]eep in mind that there . . . have been three different matters going on.… [Those matters included] a collection case[,] . . . the bankruptcy . . . liquidation of Jackson County Equipment Company[,] . . . [and] a lien dispute fight, so we're talking about three different things going on all at the same time. . . ." Considering the evidence in the light most favorable to the jury's verdict, we conclude that this testimony is not direct, clear, or positive. Rather, it is indirect, unclear, and indefinite because we cannot determine whether the witness was referring to one or to all of the proceedings when he opined that "$20,000 would be an appropriate fee." Without more, we cannot conclude that the exception applies in this case. Because the exception does not apply, we further cannot conclude that counsel's testimony established attorney's fees as reasonable and necessary as a matter of law. Thus, the trial court erred in entering a JNOV for attorney's fees on this basis.

In addition, the trial court admitted computer-generated documents from First Victoria. This documentation provided general information, balance and payment information, and a loan history of approximately two years for each note. Included in the loan histories for Notes #1 and #5 were a number of entries assessing attorney's fees for services provided by counsel's law firm to First Victoria. The amount of fees assessed for Note #1 was $12,510.54, and the amount for Note #5 was $1,973.09.[3] The fees assessed totaled $14,483.63. This evidence contradicts the testimony given by the interested witness. With contradictory evidence which tends to discredit counsel's testimony, the exception to the general rule would not apply, and the interested witness's

---

[3] The documentation for Notes #2, #3, #4, and #6 included no assessments for attorney's fees.

14

testimony would not, as a matter of law, support a JNOV on attorney's fees. *See Cochran*, 166 S.W.2d at 908; *Rosenbalt*, 240 S.W.3d at 321.

Based on the above, we cannot affirm the trial court's granting of the JNOV on attorney's fees because the evidence does not, as a matter of law, establish that $25,000 is a reasonable fee for services rendered by counsel's law firm to First Victoria. We sustain Harton's third issue.[4]

### III. CONCLUSION

Accordingly, we affirm the trial court's judgment notwithstanding the verdict, in part, as to damages, reverse its judgment, in part, as to attorney's fees, and remand this cause to the trial court for entry of judgment reinstating attorney's fees in the amount of $2500, that being the sum of attorney's fees awarded by the jury.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
19th day of May, 2011.

---

[4] When, as here, the trial court renders a JNOV, and the losing party appeals, the prevailing party may also appeal and present points or issues on any ground that would either vitiate the jury verdict or preclude affirming the judgment and reinstating the jury's verdict. *Swink v. Alesi*, 999 S.W.2d 107, 111-12 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see also* TEX. R. APP. P. 38.2(b) (providing that when a trial court renders a JNOV "the appellee must bring forward by cross-point any issue or point that would have vitiated the verdict or that would have prevented an affirmance of the judgment if the trial court had rendered judgment on the verdict"); TEX. R. CIV. P. 324(c) (stating that when a JNOV is rendered the appellee "may bring forward by cross-point contained in his brief filed in the Court of Appeals any ground which would have vitiated the verdict or would have prevented an affirmance of the judgment had one been rendered by the trial court in harmony with the verdict, including although not limited to the ground that one or more of the jury's findings have insufficient support in the evidence or are against the overwhelming preponderance of the evidence as a matter of fact"). "The purpose of these rules is to require a final disposition of the case by the appellate court, where a judgment notwithstanding the verdict is erroneously rendered by the trial court, on the basis of the record before it, and to order a remand only as to questions that require the taking of additional evidence, such as jury misconduct." *Swink*, 999 S.W.2d at 112. Therefore, "[f]ailure to bring forward by cross-point an issue or point that would vitiate the verdict or prevent an affirmance of the judgment waives that complaint." TEX. R. APP. P. 38.2(b). Here, First Victoria presented no cross-points on appeal on Harton's attorney's fee issue and, therefore, has waived this complaint.