Greg TANNER and Maribel Tanner, Individually and as Next Friends of K.T. and R.T., Minor Children, Petitioners,

v.

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Respondent.

No. 07–0760.

Supreme Court of Texas.

April 17, 2009.

Don R. Cotton, Bob Richardson, The Bob Richardson Law Firm, Austin TX, for Petitioners.

L. Chris Heinemeyer, Krenek & Heinemeyer, P.C., San Antonio TX, for Respondent.

Justice WILLETT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, and Justice JOHNSON joined.

A high-speed police chase resulting in a traffic accident sparked a personal-injury lawsuit against the fleeing driver by the family injured in the crash. This related insurance-coverage dispute asks whether the driver's attempts to elude police forfeit coverage under an intentional-injury exclusion in his automobile liability insurance policy. We hold that the insurer did not establish as a matter of law that its insured intentionally caused the family's injuries. The exclusion requires intentional damage, not just intentional conduct. We therefore render judgment on the jury's verdict in favor of the injured family.

## I. Background

Richard Gibbons was driving his pickup truck on Interstate 35 south of San Marcos when he was pulled over by a Texas state trooper. Gibbons initially stopped but then fled, with the trooper in hot pursuit chasing him into San Marcos. There, three local police officers responded and continued the pursuit. Gibbons exited the interstate and raced through the city, winding

his way through urban and residential areas of San Marcos at speeds in excess of eighty miles per hour.

Gibbons left San Marcos on Highway 80 and entered a rural area, topping 100 miles per hour and swerving into oncoming traffic to pass slower vehicles. He drove off the road and through a freshly plowed cornfield, then turned around and headed back towards San Marcos on a road running parallel to Highway 80. One San Marcos police officer tried to block the road with her cruiser, but Gibbons veered off the road and went around her.

Gibbons continued and approached the intersection with Old Bastrop Road in a rural area that, according to trial testimony, "does not have businesses or houses or anything," but rather consists of "open fields, corn fields." Gibbons reached the intersection at the same time as a car carrying the Tanner family, who had the right-of-way. Gibbons slammed on his brakes but could not avoid the collision. All four Tanners suffered injuries, but seven-year-old Roney's were the most serious, as he was sitting where Gibbons' truck struck the car.[1] Gibbons fled the accident scene, doubling back and eventually driving into yet another field. Determined to end the chase, an officer shot out two of the truck's tires. Officers forcibly removed Gibbons from his truck and placed him under arrest.

The Tanners sued Gibbons and obtained a default judgment.[2] Gibbons' insurer, Nationwide Mutual Fire Insurance Company, refused to pay damages and filed this declaratory-judgment action, arguing the intentional-injury exclusion barred coverage for the Tanners' claims. The jury disagreed, finding that Gibbons did not intentionally cause the Tanners' injuries. The trial court granted Nationwide's motion for judgment notwithstanding the verdict, and the court of appeals affirmed, "because, as a matter of law, the intentional-acts exclusion in Gibbons' liability policy excluded any coverage for the Tanners' claims."[3]

## II. Discussion

### A. Standard of Review

■ We review a JNOV under a no-evidence standard,[4] meaning we "credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not."[5] We will uphold the jury's finding if more than a scintilla of competent evidence supports it.[6] "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review."[7] Thus, to merit the trial court's JNOV, Nationwide was required to show that the evidence conclusively proved that Gibbons intentionally injured the Tanners and that no reasonable jury was free to think otherwise.

1. Roney spent over a month in the hospital (a week of that comatose) and five years in physical therapy.

2. Gibbons was jailed and charged with eight felonies: four counts of aggravated assault and four counts of failure to stop and render aid. He posted $10,000 bail and vanished, failing to appear at his 2001 trial. He was last seen in his hometown of Akron, Ohio.

3. 232 S.W.3d 330, 335.

4. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005).

5. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex.2007).

6. *Wal–Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex.2003) (per curiam).

7. *City of Keller*, 168 S.W.3d at 827.

## B. The Policy's Express Terms Decide This Case

Since insurance policies are contracts, we construe them using ordinary rules of contract interpretation.[8] Our cardinal concern is determining the parties' intent as reflected in the terms of the policy itself.[9] Accordingly, we give policy language its plain, ordinary meaning unless something else in the policy shows the parties intended a different, technical meaning.[10]

Nationwide contends that when Gibbons fled police, he voided coverage under the policy's intentional-injury exclusion, which withholds coverage for:

> Property damage or bodily injury caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct.

### 1. *"Property damage or bodily injury caused intentionally ..."*

We have not construed this precise policy language before.[11] At the outset, however, we emphasize this critical point: "intentionally" as used in the exclusion speaks to the resulting damage or injury, not to the actions that led to it. That is, the language is effect-focused and not cause-focused, voiding coverage when the resulting *injury* was intentional, not merely when the insured's *conduct* was intentional.

A contrary reading of the exclusion—that reckless acts absent deliberate injury are sufficient to forfeit coverage—"would render insurance coverage illusory for many of the things for which insureds commonly purchase insurance."[12] For example, Texas mandates liability coverage for drivers,[13] but if ordinary Texans are unprotected from those who intentionally speed or run red lights, but intend no harm to others by doing so, then Texas is replete with noncoverage notwithstanding its mandatory-coverage requirement. As one leading commentator puts it, coverage can still exist "when the injury was unintended, even if the act which gave rise to the injury was intentional."[14]

We construed similar language in *State*

---

**8.** *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex.2004).

**9.** *Id.*

**10.** *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008); *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex.1990).

**11.** Although the policy in this case is from Ohio, the standard Texas Personal Automobile Policy promulgated by the Texas Department of Insurance (but subject to approved variations) has a similar liability exclusion for an insured "[w]ho intentionally causes bodily injury or property damage." While this language is congruous to the first half of the exclusion in this case, the Texas exclusion does not have the "including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct"

addition. Notably, the standard Texas policy has an exclusion under the Personal Injury Protection Coverage for "bodily injury sustained ... [b]y that person while attempting to elude arrest by a law enforcement official" but does not have that same exclusion under the Liability Coverage.

**12.** *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 828 (Tex.1997) (holding that insured's intentional conduct can nevertheless be an "accident" under homeowner's policy if the injury was not intended); *see State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 377 (Tex.1993) (noting that the same reasoning applicable to construing the policy term "accidents" is applicable to construing an intentional-injury exclusion).

**13.** Tex. Transp. Code § 601.051.

**14.** Couch On Insurance 3d 119:8 (2005).

*Farm Fire & Casualty Co. v. S.S.*[15] In that case, a summary-judgment appeal, the plaintiff in an underlying suit claimed she contracted a sexually transmitted disease from the insured.[16] The insured's homeowner's policy contained an intentional-injury exclusion applicable "to bodily injury or property damage caused intentionally by or at the direction of the Insured."[17] The insurer contested coverage based on this exclusion.[18] In deciding what "intentionally" meant in the exclusion, we drew guidance from the Restatement (Second) of Torts and a leading treatise.[19] Reading the exclusion under these authorities, we reasoned that an insured intends to cause harm if he intends or desires the consequences of his act or believes the consequences are substantially certain to occur.[20] Accordingly, we held that although the insured intentionally had sexual relations with the plaintiff without informing her of his condition, this conduct did not establish as a matter of law that he intended to give her an STD or knew that transmission was substantially certain to follow.[21]

A similar analysis applies to the Nationwide policy, which, like the policy in *S.S.,* excludes coverage where the injury is "caused intentionally" by the insured. The evidence at trial does not indicate, as the jury charge puts it, that "the property damage or bodily injury to the Tanners was caused intentionally," much less indicate such intent as a matter of law. On the contrary, Gibbons slammed on his brakes hard enough to skid before impact, showing he actively tried to avoid the collision. The insured in *S.S.* only *hoped* to avoid causing harm while Gibbons actually, if belatedly, *tried* to avoid causing harm.

Nor does the evidence establish as a matter of law that Gibbons believed his conduct was substantially certain to injure the Tanners. While leading police on a protracted high-speed chase is not merely reckless but reprehensible, we cannot say on this record that no reasonable juror could resist finding that injury to others was unavoidable. In fact, the chase could have ended in any number of ways: with Gibbons rolling his vehicle, with Gibbons hitting a fixed object, with officers using preventive techniques to stop Gibbons' vehicle, or even with officers discontinuing the pursuit, rather than with Gibbons crashing into the Tanners. Nationwide therefore did not establish as a matter of

---

15. 858 S.W.2d 374 (Tex.1993).

16. *Id.* at 375.

17. *Id.* at 377 (alterations omitted).

18. *Id.* at 375.

19. *Id.* at 378.

20. *Id.* (citing RESTATEMENT(SECOND) OF TORTS § 8A (1965) and W. PAGE KEETON ET AL, PROSSER & KEETON ON THE LAW OF TORTS § 8, at 35–36 (5th ed.1984)). We quoted this passage:

   [I]ntent is broader than a desire or purpose to bring about physical results. It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow

from what the actor does.... On the other hand, the mere knowledge and appreciation of a risk-something short of substantial certainly-is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. The line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable person would avoid, and becomes in the mind of the actor a substantial certainty.

   *Id.* (quoting KEETON ET AL., *supra*, at 35–36).

21. *S.S.,* 858 S.W.2d at 378.

law that the Tanners' injuries were "caused intentionally" under the exclusion.

### 2. "... willful acts the result of which the insured knows or ought to know will follow...."

■ Nationwide's policy exclusion has additional language excluding coverage for "willful acts the result of which the insured knows or ought to know will follow." Insofar as this passage also focuses on whether the insured intended the injurious *result,* the language reinforces the view that the dispositive inquiry is whether the insured intended to inflict damage or injury. To forfeit coverage, the insured must intend to harm, not merely intend to act.

This part of Nationwide's exclusion also denies coverage if the insured "ought to know" that injury will result. This language might be read as stating an alternative objective test,[22] excluding coverage not only where the insured subjectively knew that injury would follow, but also where a reasonable person would know that injury would follow.

However, this objective ground for denying coverage does not alter the unequivocal "will follow" language that completes the sentence. The clause requires that the insured "ought to *know%* " that the resulting injury *"wil* follow," not "might follow" or "will likely follow" or anything else. "Will" is "used to express inevitability." [23] Tracking precisely the language of the exclusion, the jury charge—to which Nationwide did not object—asked whether "the property damage or bodily injury to the Tanners was caused intentionally by or at

the direction of [Gibbons], including willful acts the result of which [Gibbons] knows or ought to know would follow from his conduct."

Under the evidence presented at trial, a reasonable and fair-minded jury would not be compelled to find, under an objective standard, that a reasonable person would know that injury to third parties would result from Gibbons' conduct. Such a jury finding was no more required by the evidence than a finding, under a subjective standard, that Gibbons personally knew that such injury would result. Hence, we part company with the dissent on the effect of the "ought to know" language of the exclusion, and cannot say a reasonable jury in this case would necessarily find that Gibbons ought to have known that injury would result from his conduct, as indisputably reckless as it was. Put simply, the injury was not so inevitable that we can say as a matter of law it was intended.

Nationwide relies on *Nationwide Mutual Insurance Co. v. Finkley,*[24] an Ohio intermediate appeals court decision that construed the same policy exclusion and concluded "no coverage." We find *Finkley* unpersuasive as it misapplies the policy exclusion. Although *Finkley* describes a Texas-like standard that would bar coverage where the insured's conduct is "substantially certain to result in injury," [25] *Finkley* actually applies a different standard, opining that "[a]ny reasonable person would know, or should know, that such actions [of the driver] would probably lead

---

22. *See Nationwide Mut. Ins. Co. v. Jones,* No. Civ. JFM–05–2792, 2006 WL 361336, at *3 n. 3 (D.Md. Feb.15, 2006) (noting that "ought to know" language in identical Nationwide policy exclusion suggests an objective rather than a subjective analysis).

23. Webster's Third New International Dictionary 2617 (2002).

24. 112 Ohio App.3d 712, 679 N.E.2d 1189 (1996).

25. *Id.* at 1190–91.

to serious injury."[26] In our view, this reading departs from the controlling policy language. The exclusion does not apply whenever a reasonable person would or should know that his actions "would probably lead" to injury; the policy imposes a stricter test, that the driver ought to know that injury "will follow" from his conduct.

We understand the appeal of a broader exclusion that would withhold coverage for, as Nationwide's predecessor policy put it, "willful acts which can be reasonably expected to result in damage or injury." But Nationwide replaced that test with the more restrictive version that controls today's case. We must construe the policy as written, not as we might have written it nor as Nationwide once wrote it. Given the clarity of the exclusion and the jury charge, which mirrors the exclusion virtually verbatim, we cannot conclude jurors disregarded the policy and the evidence in reaching their verdict, much less conclude they were obliged to reach the opposite result.

## III.  Conclusion

Because Nationwide did not establish as a matter of law that Gibbons intentionally caused the Tanners' injuries, the jury's verdict must stand. Accordingly, we reverse the court of appeals' judgment and render judgment on the jury verdict.

Justice BRISTER filed a dissenting opinion.

Justice BRISTER filed a dissenting opinion.

Anyone who drives a huge 4-ton pickup at 100 miles an hour through city streets during rush hour "ought to know" that someone is going to get hurt. This insurance policy excluded such conduct, so the judges of the trial court and court of appeals correctly denied coverage. Because the Court holds otherwise, I respectfully dissent.

There will never be a more extreme case than this. After being pulled over by a state trooper around 5 p.m. on Interstate 35 in San Marcos, Richard Gibbons took off in his Ford F–350 heavy-duty truck, with the trooper and then several local police cars in hot pursuit. Gibbons cut through residential neighborhoods at more than 80 miles an hour, careening around corners and running through yield and stop signs. Turning onto Highway 80, he hit speeds above 100 miles an hour, swerving head-on into oncoming traffic to pass, cutting across open fields, and driving around a police roadblock. Ultimately he smashed into the Tanners' car at an intersection, which slowed him down only for a moment. He was finally stopped when police shot out half of the truck's six tires. Charged with eight felony counts, Gibbons was released on $10,000 bail; true to form, he fled and has never been prosecuted.

The $300,000 auto liability policy issued to Gibbons excluded "[p]roperty damage or bodily injury caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct." "Ordinarily," we have said, "whether an insured intended harm or injury to result from an intentional act is a question of fact."[1] But "ordi-

---

26.  *Id.* at 1190. Given the facts of *Finkley*, the Ohio court's no-coverage conclusion is understandable under a looser "would probably lead" test. *Finkley* involved an unlicensed teenager who crashed in an urban area, not, as in our case, a licensed adult who crashed in a rural area. Moreover, unlike our case, *Finkley* includes no evidence regarding the driver's subjective intent to avoid causing injury.

1.  *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 378 (Tex.1993).

narily" means that in some extreme cases it is *not* a question of fact, but a question of law. "Ought to know" is an objective standard, so there must be some outer boundaries beyond which an insured's conduct is either so harmless or so reckless that no fact question is presented.

Texas courts have apparently not addressed whether a high-speed police chase falls within the intentional-acts exclusion. But this Ohio insurance policy was issued to Gibbons in Ohio, and Ohio courts have. "[W]here an insured willfully and purposefully attempts to elude police in an automobile chase through an urban area in reckless disregard of traffic control devices, his actions are substantially certain to result in injury."[2] This is both sensible and consistent with Texas law, which applies an intentional-injury exclusion if an insured "intends the consequences of his act, or believes that they are substantially certain to follow."[3]

The Court's main mistake is in viewing this accident far more narrowly than the policy does. The Court says the exclusion requires "intentional damage, not just intentional conduct," but the exclusion applies even if he did *not* intend damage but "ought to know [it] will follow from [his] conduct." The Court requires proof that the insured "intentionally injured *the Tanners*," but the exclusion does not require that an insured know precisely who or what he would hit. The Court says reasonable jurors could conclude the chase could have ended with Gibbons "rolling his vehicle" or "hitting a fixed object," but either would still be the kind of property damage he ought to have known would

follow. The Court says Gibbons ought to have known the police might "discontinu[e] the pursuit," though it is a mystery why an objective, reasonable-person standard would include such an unreasonable hope. The Court focuses narrowly on the rural area of "open fields, corn fields" where an accident finally occurred, forgetting all of Gibbons' willful acts on I-35, Highway 80, and the residential areas through which this high-speed police chase passed. And the Court emphasizes that Gibbons applied his brakes before the collision, even though someone driving a truck this big this fast in these circumstances ought to know an accident would follow *even if* he tried to avoid it at the last second. In sum, the Court avoids this policy exclusion by focusing narrowly on what Gibbons knew a split second before this precise crash.[4]

The rest of the Court's opinion consists largely of red herrings and straw men:

- the insurer did not object to the jury charge, but there was no reason to do so as the charge merely quoted the policy;
- the current policy exclusion is more restrictive than a former one, but the circumstances here meet either; and
- Texans need coverage from drivers who "intentionally speed or run red lights," but Gibbons did a lot more than run a red light.

It should not be debatable whether an insured "ought to know" that harm would follow from this kind of outrageous driving. The police certainly thought so, breaking off the chase in a residential area because it was too dangerous, and shooting at the truck (an act requiring supervisory

---

**2.** *Nationwide Mut. Ins. Co. v. Finkley*, 112 Ohio App.3d 712, 679 N.E.2d 1189, 1191 (1996).

**3.** *S.S.*, 858 S.W.2d at 378 (citing RESTATEMENT (SECOND) OF TORTS § 8A (1965)).

**4.** *See City of Keller v. Wilson*, 168 S.W.3d 802, 812 (Tex.2005) ("[I]f evidence may be legally sufficient in one context but insufficient in another, the context cannot be disregarded even if that means rendering judgment contrary to the jury's verdict.").

approval) because the officers "felt like we needed to end it before anyone else was injured." The Tanners' attorney also thought so, conceding in his opening statement that accidents like this one "happen[ ] all the time when people run from police." Indeed, the most surprising thing on this record is not that there was an accident, but that someone wasn't killed. If the Court "cannot say on this record" that Gibbons ought to have known damage would follow his conduct, then courts can never say it. As a result, this explicit exclusion does not mean what it says, but whatever jurors decide they want it to say.

Not surprisingly, that is precisely what the Tanners' counsel urged jurors to do. In his opening, he summarized the issue for trial as follows: "Does Nationwide have a technicality in this document buried in one sentence of one page that somehow lets them off the hook or not?" Exclusions, of course, are not technicalities— they are part of the contract. Jurors may naturally tend to favor a victimized family rather than a big insurance company, but judges exist to make sure contracts mean what they say, no matter whom the judges or jurors want to win.

If insurers must pay for intentional, criminal acts by policyholders like Gibbons, they will have to charge everyone higher premiums. As a result, some drivers will simply do without insurance. Ignoring the policy terms in this case may seem compassionate, but in the long run it may prove otherwise.

By any measure, an insured like Gibbons "ought to know" that driving like he did would hurt someone or something sooner or later. As his insurer did not agree to pay for that kind of intentional conduct, I would affirm the courts below.