

# Fourth Court of Appeals

### San Antonio, Texas

## DISSENTING OPINION

No. 04-12-00852-CV

Jerry L. **HAMBLIN** and Ricochet Energy, Inc.,
Appellants

v.

Thomas A. **LAMONT**,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2008-CVF-000665-D2
The Honorable Joe Lopez, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:       Rebeca C. Martinez, Justice
               Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  December 11, 2013

I agree with the majority's assumption that Lamont was entitled to indemnity pursuant to

the language of the Master Agreement.  More specifically, I believe that Lamont was entitled to

indemnity under the Prospective Indemnity clause because the liability Lamont incurred in the

Vaquillas Lawsuit pertained to Ricochet and/or its operations, actions, and inactions.  I disagree,

however, with the majority's conclusion that the agreement's failure to meet the requirements of

the express negligence test renders the indemnity clauses unenforceable.

The issue of public policy was minimally briefed on appeal by Hamblin and Ricochet and

included no argument relating to the express negligence doctrine.  In both *Dresser* and *Ethyl*, on

which the majority relies, the appellants specifically raised express negligence as a defense to imposing indemnity liability on appeal.  *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 821 S.W.2d 359, 362 (Tex. App.—Waco 1991), *aff'd in part and rev'd in part*, 853 S.W.2d 505 (Tex. 1993); *Daniel Constr. Co. v. Ethyl Corp.*, 714 S.W.2d 51, 53 (Tex. App.—Houston [14th Dist.] 1986), *aff'd*, 725 S.W.2d 705 (Tex. 1987).  Here, by contrast, Hamblin and Ricochet relied on sections 8.101 and 8.102 of the Business Organizations Code in support of their argument that public policy considerations should bar Lamont's claim for indemnity for his intentional torts. Chapter 8 prohibits a corporation from indemnifying a director who is "found liable for willful or intentional misconduct in the performance of [his] duty to the enterprise" or who breaches his duty of loyalty to the enterprise.  *See* TEX. BUS. ORG. CODE ANN. §§ 8.101-.102(3) (West 2012). Chapter 8, however, is inapplicable to the instant situation, because Lamont was not found liable for breaching any duty to Ricochet.

In stretching to reverse the summary judgment, the majority *sua sponte* extends the express negligence doctrine, and concludes that the indemnity provisions should fail because they did not specifically state that the parties intended to indemnify Lamont for his own intentional torts.  As an intermediate appellate court, we are bound by the precedent of the highest courts of the state. *See Scoresby v. Santillan*, 287 S.W.3d 319, 324 (Tex. App.—Fort Worth 2009), *aff'd*, 346 S.W.3d 546 (Tex. 2011).  Until a majority of the Supreme Court holds that in order to be indemnified for intentional torts contracting parties must explicitly state that the indemnitor will indemnify the indemnitee for his own torts, I am reluctant to do so.  *See, e.g., Webb v. Lawson-Avila Constr., Inc.*, 911 S.W.2d 457, 462 (Tex. App.—San Antonio 1995, writ dism'd) (declining to hold that agreement to indemnify for gross negligence was against public policy where the Supreme Court had not yet addressed the issue).

Nonetheless, I am not persuaded that the Supreme Court would conclude that public policy prohibits Lamont from being indemnified for the liability he incurred for tortious interference with contract and misappropriation of trade secrets because there is no evidence in this record that Lamont intended to cause injury to the Vaquillas plaintiffs. *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828 (Tex. 2009). The *Tanner* court examined whether an auto policy excluding "property damage or bodily injury caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct," exempted the insurer from paying for damages caused by a high-speed police chase. *Id*. at 831. Noting that coverage can still exist "when the injury was unintended, even if the act which gave rise to the injury was unintentional," the Supreme Court held that the insurer failed to prove that the insured intended to cause property damage or bodily injury to the Tanner family when he intentionally led the police on a high-speed chase. *Id*. at 831-32. Although the insured's conduct was reckless and reprehensible, it was not a foregone conclusion that the chase would end with injury to others. *Id*. Thus, the Court held that the insurer failed to prove the applicability of the intentional injury exclusion and that the jury had evidence before it that would support a verdict that the insured did not intend the damage to the Tanners. *Id.* at 831-33.

Notably, the Court did not use this opportunity to hold that public policy forbids an insured from obtaining coverage against liability for the insured's intentional conduct, even when that conduct is "reprehensible." *See id*. at 832. It, therefore, appears to me that public policy should disfavor indemnity for intentional torts only in those situations where there is an intent to cause the resulting injury. *See, e.g., Atlantic Richfield Co. v. Petroleum Personnel, Inc*., 768 S.W.2d 724, 726 n.2 (Tex. 1989) (declining to decide "whether indemnity for one's own gross negligence

or intentional *injury* may be contracted for or awarded by Texas courts"). Neither misappropriation of trade secrets nor tortious interference with contract require an intent to cause injury. *See Sw. Bell Tel. Co. v. John Carlo Tex., Inc*., 843 S.W.2d 470, 472 (Tex. 1992) (noting that "intentional interference does not require intent to injure, only that 'the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it'"); *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied) (listing elements of misappropriation). Accordingly, Lamont should not be precluded from recovering in indemnity because there is neither evidence nor a jury finding that he acted with the intent to cause injury to the Vaquillas plaintiffs.

In any event, I believe that the policy reasons behind the express negligence test are inapplicable here. My review of the summary judgment record reveals that the Master Agreement clearly stated the intent of the parties "to provide as broad of an indemnity as possible and all ambiguity as to whether Hamblin and Ricochet Energy, Inc. owe the duty of indemnification shall be resolved in favor of providing the indemnity/indemnification." Hamblin and Lamont were both knowledgeable individuals, experienced in the oil and gas industry, and represented by competent legal counsel at the time the Master Agreement was executed. The Master Agreement was negotiated at length by the parties, and Hamblin and Lamont both initialed each page of the agreement. In fact, the undisputed summary judgment evidence shows that the indemnity provisions were crucial to the parties' negotiation of the Master Agreement. In his affidavit attached to his motion for partial summary judgment, Lamont avers that, "One thing that was very important in our negotiations of the Master Agreement was indemnities. . . . I insisted on having the protection of indemnities. The Master Agreement contained very broad indemnities." Clearly, both parties were on notice that the indemnity provisions they negotiated were wide-ranging.

Therefore, I would conclude that (1) the liability Lamont incurred as a consequence of his misappropriation of the trade secret and tortious interference with the Prospect Generation Agreements pertains to Ricochet and/or its operations, actions, and inactions for purposes of indemnification under the Prospective Indemnity clause of the Master Agreement, and (2) under current law, public policy does not prohibit sophisticated parties from contractually agreeing to indemnify one another for actions that may include tortious conduct, even though the contract does not so specify.  Accordingly, I would hold as a matter of law that Hamblin and Ricochet owe a contractual obligation to indemnify Lamont, and I would affirm the judgment of the trial court.

Rebeca C. Martinez, Justice