

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-13-00646-CV

Robert Ray **PEREZ** and Rhonda Lee Arevalo,
Appellants

v.

Arturo Zepeda **ARREDONDO**, and
CUSA KBC, LLC d/b/a Kerrville Bus Company,
Appellees

From the 79th Judicial District Court, Brooks County, Texas
Trial Court No. 10-07-15670-CV
Honorable Joaquin Villarreal III, Judge Presiding

Opinion by:    Karen Angelini, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed: December 3, 2014

I respectfully dissent because I believe there was sufficient evidence to support a reasonable jury's finding that both the objective and subjective prongs of the gross negligence claim were met.

### GROSS NEGLIGENCE

As noted in the majority opinion, the jury found that the harm to Perez and Arevalo resulted from gross negligence attributable to KBC and awarded $1 million in exemplary damages against KBC. The trial court, however, concluded there was no evidence to support the jury's gross

negligence finding and entered a JNOV disregarding the finding and exemplary damages award. In my opinion, the trial court erred in finding there was "no evidence" to support the jury's finding and exemplary damages award.

### *Standard of Review*

In reviewing the entry of a JNOV, we determine whether there is any evidence upon which the jury could have made the disregarded finding. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (entry of judgment notwithstanding the verdict is subject to review under a no-evidence standard). In doing so, we view the evidence in the light most favorable to the verdict, crediting favorable evidence and inferences if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In this case, our review of the evidence in the light most favorable to the jury's finding is informed by the elevated standard of proof applicable to a gross negligence claim. Perez and Arevalo had the burden to establish KBC's gross negligence by "clear and convincing" evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a)(3) (West Supp. 2014) (claimant may be entitled to exemplary damages for gross negligence claim only if he "proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from . . . gross negligence"); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 138 (Tex. 2012). "'Clear and convincing' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(2) (West 2008). Thus, when we are reviewing the sufficiency of the evidence to support a jury finding under a "clear and convincing" standard of proof, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Sw Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004). In looking at

the evidence in the light most favorable to the finding, we assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.*

### *Analysis*

Gross negligence involves two components, requiring an act or omission (1) "which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others," and (2) "of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (West 2008). We therefore examine the record to determine whether the evidence, when viewed in the light most favorable to the jury's finding, supports a "firm belief or conviction" that both prongs of gross negligence were met. *Id.*; *Garza*, 164 S.W.3d at 627.

### *(1) Objective Prong*

The first issue is whether there is evidence of an act or omission by KBC that, viewed objectively from KBC's standpoint at the time, involved an extreme risk of harm to others. TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11). In this context, an extreme risk is not merely "a remote possibility of injury or even a high probability of harm, but rather the likelihood of serious injury to the plaintiff." *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (quoting *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)). We examine this risk "prospectively from the perspective of the actor, not in hindsight." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008).

In support of this element, Perez and Arevalo cite to the evidence of Arredondo's bad driving history with KBC, KBC's knowledge of that history, KBC's own policy with regard to driver operations and safety, and KBC's actions and inactions with respect to Arredondo.

Under KBC's written "Rules of Conduct: Discharge and Discipline," a progressive discipline policy is applied to safety infractions, with a written warning given for the first (optional counseling), second, and third offenses; a driver may be suspended or discharged upon committing a third offense. Discharge is mandatory when a driver commits a fourth safety offense.[1] KBC's policy defines a "Safety Infraction" offense as: (1) failure to operate the vehicle in a safe and proper manner; (2) failure to comply with State traffic laws; failure to observe and adhere to posted street signs, traffic instructions, hazard warnings, etc.; (3) failure to comply with DOT regulations; (4) involvement in a chargeable (preventable) accident with minimal damage; (5) violation of safety or health rules; and (6) failure to comply with any other safety rule enumerated in an appendix attached to the policy.

The record shows KBC hired Arredondo and trained him to drive its commercial buses on about July 20, 2007. During the three-month span from July 20, 2007 to October 26, 2007, Arredondo committed two accidents, both of which involved his bus hitting a fixed object—the first time, Arredondo hit a parked vehicle; the second time, he hit a pedestrian walk sign. These accidents occurred on the same day. Arredondo received two written warnings from KBC informing him that these incidents amounted to two "chargeable accidents" under its progressive discipline policy for safety infractions. After the two warnings, Arredondo received re-training. From October 26, 2007 to January 23, 2008, Arredondo was still employed by KBC but did not drive a bus at all during that period. Thus, during the first six months he was employed by KBC, Arredondo received two warnings for accidents within the first three months, and did not drive at all during the last three months. On January 23, 2008, Arredondo was involuntarily terminated by

---

[1] KBC's policy contains the qualifying phrase "[d]epending on the seriousness of the offense" at the beginning of Sections 2 and 3 prescribing the progressive discipline that will be imposed for the designated Safety Infractions and Operating Infractions.

KBC.  Christopher Robertson, Safety Director of KBC in 2008, testified that Arredondo was fired for "inactivity" and failure to properly keep his DOT logs.  KBC has a policy that a worker is dismissed after six months of inactivity.  A "DO NOT RE-HIRE" notation was written on Arredondo's personnel action form, which was placed in his personnel file.  Robertson testified he did not write the notation and did not know the reason for it.

After Arredondo was fired in January 2008, KBC began re-qualifying him for re-hiring five months later in June 2008—despite the fact that Arredondo's file contained a "DO NOT RE-HIRE" directive.  Arredondo had not driven a bus since the previous October, a period of eight months.  An operator pre-trip evaluation form dated June 27, 2008 documented that Arredondo was "weak on vehicle control knowledge," and recommended follow-up training and follow-up evaluation; it also noted his driver log was not filled out correctly.  A personnel action form in the record shows KBC re-hired Arredondo on July 18, 2008.  A subsequent pre-trip evaluation in August 2008 indicates that Arredondo received more training and improved on his driving skills.  Despite receiving remedial retraining, Arredondo had several more accidents and incidents during his second period of employment before the accident involving Perez and Arevalo.  From April 2009 to April 2010, Arredondo received four more warnings from KBC under its progressive discipline policy for the following "Safety "Infraction" offenses: (1) an incident in April 2009 in which he drove to the wrong city with a bus full of children; (2) an accident[2] on the way to Eagle Pass in July 2009; (3) an accident in which his bus hit a fixed object, an awning, in April 2010; and (4) a series of DOT log violations.  Arredondo received retraining after each warning.  Under KBC's own progressive discipline policy, these four safety offenses during a one-year period

---

[2] The record does not contain any detail regarding the nature of the accident in Eagle Pass, other than it was characterized as a "chargeable (preventable) accident with minimal damage" under KBC's policy.

should have resulted in Arredondo's mandatory discharge upon the fourth offense—prior to the accident involving Perez and Arevalo that occurred in June 2010.

KBC argues that the accidents reflected on Arredondo's driving history during the three years of his employment[3] were all minor and none involved significant injuries, unlike the accident involving Perez and Arevalo. KBC stresses that, for several of these accidents, no passengers were even on the bus at the time.[4] Thus, given the relatively minor nature of Arredondo's prior accidents, KBC asserts its actions and inactions with regard to Arredondo did not objectively involve an extreme risk of harm to the public.

The fact that Arredondo's previous accidents were relatively minor is not determinative of the objective risk issue. "[A]wareness of an extreme risk does not require proof that the defendant anticipated the precise manner in which the injury would occur or be able to identify to whom the injury would befall." *U-Haul*, 380 S.W.3d at 139; *see Montemayor v. Heartland Transp., Inc.,* No. B-07-CV-151, 2008 WL 4777004 (S.D. Tex. Oct. 30, 2008) ("common sense suggests that often only the most infinitesimal of contingencies separate a minor accident from becoming a major one"). A foreseeable risk does not require proof that the defendant anticipated "the precise manner in which the injury will occur." *U-Haul*, 380 S.W.3d at 138 (quoting *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001)). The record here shows a continuous pattern of accidents by Arredondo, beginning right after he was hired in July 2007 and continuing throughout his employment with KBC, with the latest accident occurring as late as April 2010, two months before the accident with Perez and Arevalo. This is not a situation where a new bus

---

[3] KBC's statement that Arredondo drove their buses for three years before the Perez/Arevalo accident is somewhat misleading since he was inactive for three months and was terminated for five months during that three-year period.

[4] This argument that no passengers on Arredondo's bus were harmed is inapposite because the statute merely requires an extreme degree of risk to "others."

driver was involved in several accidents at the beginning of his training and then improved. Despite multiple retraining sessions, Arredondo kept having accidents throughout the *entire term* of his employment with KBC. Moreover, the accidents involved Arredondo hitting objects with the bus—a parked car; a pedestrian "walk" sign; an awning. Thus, there was evidence upon which the jury could form a firm belief that an extreme risk existed, based on probability, that Arredondo would again collide with an object, whether fixed or not, while driving a KBC bus. As to the magnitude of the potential harm to others, it was dependent on what the object was that Arredondo hit and who was inside it. Colliding into the back of a stopped vehicle turning left from an active lane of traffic on a public thoroughfare would be more likely to cause serious injury to the vehicle's passengers than hitting an empty vehicle parked on the side of the road. Viewed objectively from KBC's standpoint, there was sufficient evidence to support a firm belief that an extreme degree of risk existed that Arredondo would hit another vehicle on the roadway, resulting in the likelihood of serious injury to others. *See U-Haul*, 380 S.W.3d at 139 (awareness of an extreme risk does not require proof that the defendant anticipated the precise manner in which the injury would occur or be able to identify to whom the injury would befall).

Therefore, viewing the evidence in the light most favorable to the jury's finding of the objective prong for gross negligence, I believe there is sufficient evidence upon which a reasonable jury could form a firm belief that KBC's decisions to terminate indefinitely, and yet rehire Arredondo as a driver despite a driving record with two collisions, and/or its subsequent decision to maintain his employment after four additional safety offenses mandating discharge, when viewed objectively from KBC's perspective at the time, involved an extreme risk of harm to other drivers and their passengers.

### (2) Subjective Prong

A defendant must also have subjective awareness of the specific risk at issue, and consciously disregard the risk, to be grossly negligent. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11). Thus, the next issue is whether there is evidence that would support the jury's firm belief that KBC was subjectively aware of the extreme risk to the public and proceeded with conscious indifference to the safety of others by disregarding its own directive (i.e., "Do Not Rehire") and re-hiring Arredondo and/or failing to fire Arredondo after his fourth safety offense, which occurred as early as April 2010. *Id.* "In examining proof of the subjective component, courts focus on the defendant's state of mind, examining whether the defendant knew about the peril caused by his conduct but acted in a way that demonstrates he did not care about the consequences to others." *Reeder v. Wood Cnty. Energy, LLC*, 395 S.W.3d 789, 796 (Tex. 2013). "[W]hat separates ordinary negligence from gross negligence is the defendant's state of mind; in other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Diamond Shamrock Refining Co., L.P. v Hall*, 168 S.W.3d 164, 173 (Tex. 2005). A defendant is not grossly negligent when it "actually and subjectively believes circumstances pose no risk to the injured party, even if they are wrong." *U-Haul*, 380 S.W.3d at 141.

KBC claims there is no clear and convincing evidence that it actually knew Arredondo's driving ability presented an extreme degree of risk to the public and proceeded with conscious indifference to that risk. KBC contends it could not have known that Arredondo would injure a member of the public by hitting another vehicle while driving one of its buses.

Yet, KBC had itself documented, and thus had actual knowledge of, Arredondo's driving record filled with accidents from the date of his initial hire in July 2007 through his accident in April 2010, a mere two months before the Perez/Arevalo accident. KBC required Arredondo to

undergo retraining on multiple occasions, further supporting a finding that KBC was aware of the danger posed by Arredondo's reckless driving. Indeed, KBC documented Arredondo's weakness on "vehicle control knowledge" right before it re-hired him. Most revealing, KBC's records include the personnel action form documenting Arredondo's termination in January 2008, which shows that an internal decision was made at KBC to involuntarily fire him as a bus driver and another decision was made to add a directive stating "DO NOT RE-HIRE" Arredondo. This documentary evidence shows, or at least supports a reasonable inference, that KBC was subjectively aware of Arredondo's risk to the public's safety before his rehiring. Indeed, KBC decided to indefinitely terminate Arredondo's employment with KBC and deemed him ineligible for rehire. This action may show that the company cared about the consequences to others in firing him. What does it show that KBC ignored its own directive and rehired him if not conscious indifference to the safety of others?

Notwithstanding speculative argument as to KBC's reason(s) for rehiring Arredondo, the mere fact that KBC did rehire Arredondo five months after his termination, contrary to its own mandate not to rehire him, shows that KBC consciously disregarded its own internal decision not to rehire him and consciously ignored the risk to the public posed by his reckless driving record. Further, despite Arredondo's additional accidents involving collisions and his accumulation of four warnings mandating discharge after his rehiring (in addition to his two previous warnings for collisions), KBC failed to act and did not terminate him in April 2010 in accordance with its own policy. This evidence supports a firm belief that KBC was consciously indifferent to the extreme risk that Arredondo posed to the public. Robertson recognized KBC's dangerous decisions when confronted with the laundry list of incidents involving Arredondo at trial, and conceded that he would give himself a grade of "D or F" on safety supervision in this situation.

Viewing this evidence in the light most favorable to the jury's finding of the subjective prong for gross negligence, I believe it is sufficient to support a firm belief or conviction that KBC had actual, subjective awareness of the extreme risk posed by Arredondo's continued driving, but proceeded with conscious indifference to the risk to public safety when it fired him indefinitely and then re-hired him in June 2008, and again when it did not fire him in April 2010 even though mandated by its own policy.

In conclusion, because I believe the evidence presented at trial was sufficient to support the jury's finding that KBC was grossly negligent, I would reverse the portion of the trial court's judgment disregarding the jury's gross negligence award and render judgment on the jury's verdict in its entirety, subject to the statutory cap on exemplary damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008 (West Supp. 2014).

Rebeca C. Martinez, Justice