# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00317-CV

**Terry Randall, Appellant**

**v.**

**Herbert J. Walker d/b/a Walker Water Well; and
Walker Water Well Services, LLC, Appellees**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 423RD JUDICIAL DISTRICT
### NO. 423-2441, HONORABLE CHRISTOPHER D. DUGGAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a judgment notwithstanding the verdict (JNOV) in favor of defendants/appellees Herbert J. Walker d/b/a Walker Water Well; and Walker Water Well Services, LLC (collectively, Walker), after a jury awarded plaintiff/appellant Terry Randall $42,500 in damages for breach of a water-well contract. On appeal, Randall contends that the district court erred in rendering JNOV. Because the evidence supporting the jury's findings, as submitted, is legally sufficient, as discussed below, we reverse the district court's judgment and render judgment in favor of Randall in accordance with the jury's findings.

## Background[1]

In October 2011, Randall purchased a drilling rig to dig three water wells on his property in Smithville, Texas. Because Randall had no personal experience with using a drilling rig to drill water wells, Randall asked Herbert Walker, a licensed water-well digger, to instruct him so that Randall would be able to drill the wells himself. After unsuccessfully attempting to drill the wells himself, Randall decided to have Walker drill the three wells he wanted on his property, which Walker did using Randall's drilling rig and other supplies and equipment Randall provided. In return for the three wells, Randall gave his drilling rig to Walker.

The water that Walker's wells produced was not potable—it was dirty and sandy with high iron content. Although Walker attempted to resolve the problems and also reassured Randall that the wells just needed time to clear, the water never cleared and is "still unusable and unfit for consumption." As a result, Randall filed the underlying suit against Walker for breach of an oral agreement that Walker would drill and install three "good" water wells on Randall's property in exchange for Randall's drilling rig, which Randall had already given to Walker.

After a two-day trial, the jury answered "yes" to the first two questions in the charge:

QUESTION #1

Did [Randall and Walker] agree that [Walker] would drill three water wells to a depth of 250 feet using a drilling rig owned by Terry Randall; that [Walker] would set the tanks and the pumps on those wells; that the wells would produce good water; and that Terry Randall would transfer ownership of his drilling rig to [Walker] as payment for the wells?

---

[1] The facts recited in this opinion are taken from the record and the parties' briefs.

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

QUESTION #2

Did [Walker] fail to comply with the agreement?

Based on these affirmative answers, the jury then found that the breach caused Randall damages of $42,500 and that Randall's attorney fees were $30,845. In response, Walker filed a motion for JNOV, which the district court granted. It is from this judgment that Randall appeals.

## Discussion

Randall challenges the district court's JNOV in one issue, asserting that the district court erred because the evidence supporting the jury's findings is legally sufficient. We agree.

We review a trial court's grant of JNOV under a no-evidence standard—i.e., legal-sufficiency standard—examining whether any evidence supports the jury's findings.[2] No evidence exists when there is: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact.[3] More than a scintilla of evidence exists when

---

[2] *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015) (citing *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex. 1990)).

[3] *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (citing Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362–63 (1960))).

the evidence supporting the finding "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."[4] When determining whether any evidence supports a judgment, we are "limited to reviewing only the evidence tending to support the jury's verdict and must disregard all evidence to the contrary."[5] We view the evidence and possible inferences in the light most favorable to the verdict.[6] If more than a scintilla of evidence supports the jury's findings, we must reverse the JNOV and uphold the jury's verdict.[7] Where, as here, the district court does not specify the grounds for granting the JNOV motion, we must uphold the district court's ruling if any of the stated grounds in Walker's JNOV motion uphold the judgment.[8]

**Question 1—existence of agreement**

In challenging the jury's answer to question 1, Walker asserts that there is no evidence that Randall and Walker entered into the agreement described and, further, that Randall's testimony at trial constitutes a judicial admission that there was no agreement. Specifically, Walker assert that "Many of these terms were never testified to at all, or were contradicted by Plaintiff's own

---

[4] *Id.* (citing *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995) (citation omitted)).

[5] *Id.* (citing *Mancorp*, 802 S.W.2d at 227).

[6] *Id.*

[7] *Id.* (citing *Garcia v. Ins. Co. of State of Pa.*, 751 S.W.2d 857, 858 (Tex. 1988) (per curiam)).

[8] *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991).

4

testimony" and that "Plaintiff's own testimony constitutes a judicial admission that he did not [sic] an agreement with Defendant of the nature asked about in question 1."

We note first that, even if we assume that Randall's testimony was contradictory, his contrary testimony would be, at most, a quasi-admission, not a judicial admission.[9] And while a judicial admission is conclusive upon the party making it, a quasi-admission is merely some evidence of the contrary position; it is not conclusive upon the admitter like a true judicial admission is.[10] The weight to be given a quasi-admission is decided by the trier of fact, here the jury.[11]

In the record before us, there is legally sufficient evidence to support the jury's finding that Randall and Walker entered into the following agreement: Walker would drill three water wells to a depth of 250 feet using Randall's drilling rig; Walker would set the tanks and the pumps on those wells; the wells would produce good water; and Randall would transfer ownership of his drilling rig to Walker as payment for the wells. That evidence consists almost entirely of Randall's sworn testimony, including the following:

Q.    And what was that deal?

A.    The deal was that Mr. Walker would come over and drill me three good water wells for the drilling rig.

. . .

---

[9] *See Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980) (noting true judicial admission is formal waiver of proof usually found in pleadings or stipulations).

[10] *Id.* (citing *Gevinson v. Manhattan Constr. Co. of Okla.*, 449 S.W.2d 458, 467 (Tex. 1969); McCormick and Ray, *Texas Law of Evidence* § 1127 (2d ed. 1956)).

[11] *Id.*

Q.     Was it part of this agreement with Mr. Walker that you would pay for all the materials involved?

A.     Yes, sir.

. . .

A.     No, sir.  He didn't ask to be paid hourly.  The deal was that he would drill me three good water wells for the drilling rig.  And he would, you know, set the equipment and everything.

. . .

Q.     Did Mr. Walker accept your offer?

A.     He did, sir.

Q.     Did your offer include the depths of each well to be drilled?

A.     No.  It didn't include the depth.  There was some talk about the depth because, you know, I was in the process of moving back and forth from Houston.  And, you know, during the conversation [Walker] had mentioned he had looked up on-line some depths of existing wells in the area, and I also had looked at some existing wells, and, you know, generally speaking, you know, it just—it was a reference.  But he mentioned that maybe two, two hundred fifty foot was probably good water, I mean, and I said, yeah, that's what it takes, you know, I need to get the good water.

. . .

Q.     Could you repeat for the jury your agreement with Mr. Walker.

A.     My agreement with Mr. Walker was to come and drill me three good water wells on my property.  And for doing the work of drilling the wells and completing them I was to give him the drill rig.

Q.     Did he accept the agreement?

A.     He did.

[Cross examination]

Q.   Right. Now, you also said in the past that the agreement was that they would be three potable water wells; isn't that right?

A.   No. Potable water—drinking water wells, yes, sir.

Q.   So it's your testimony today that y'all's agreement wasn't for good water wells, it was for potable water wells?

A.   Well, to me good and potable water is the same thing. Yes, sir.

. . .

Q.   [Reading from deposition testimony] Back in October 2013, Mr. Randall, you said, quote, "He was going to take them down about 250 feet was the agreement." Did I read that right?

A.   Yes, sir.

Q.   Now, you did say about 250 feet. So—

A.   Well, I mean that's what I was told by him. The water—I mean, I didn't know where good water was or not. It's him that said he looked at a lot of the wells in the area and I kind of casually went along with him and said, yes, you know, 250 foot, good water. That would be fine.

Q.   So the explanation you got for the jury now, over a year after you gave this testimony, is that it was [Walker]'s idea that he told you it needed to be 250?

A.   Yes, sir. He said it was about 250 was the good water.

Q:   . . . [reading from deposition testimony] I asked you, So it's your testimony now that the agreement was that there were going to be three good wells that were going to be at least 250 feet deep? You answered, right.

A.   Well—

Q.   Did you say anything in there about Herb told me that's where the water was?

A.   But that's how we came up—I come up with it. Herb was telling me what he thought was going to happen. Just like he drilled the well 60 foot and then

7

the other one 100 foot. And I still assumed I would have good water. You know, that was just something that Herb was telling me as a well man. I mean—

Q. So it's your testimony now that 250 feet—that that term—that maybe there was some confusion about it?

A. Sir, if he would have drilled 250 foot and got me good water, I wouldn't be here today.

Q. Because that was a term of the agreement, according to you?

A. That was terms of the agreement was to give me good water. Potable water.

Q. Now, there's also a term of the agreement that Mr. Walker was going to set the tanks and pumps on each well; isn't that right?

A. That was correct.

. . .

Q. He was going to set the tanks and the pumps on each well.

A. Yes, sir.

Q. And it's your testimony in exchange for doing that, for drilling three wells, guaranteeing potable water, drilling each 250 feet deep, and setting the tanks and pumps on each well—in exchange for those things—Mr. Walker doing those things, you would sign over your drilling rig?

A. That was the agreement, yes, sir. That I sign it over to him if we had the good well and good water. Yes.

Q. And it's your testimony that these are terms Herbert Walker expressly agreed to?

A. Yes, sir.

Q. There's no doubt in your mind that he knew what was expected and he said yes?

A. There's no doubt in my mind, yes.

8

In addition to Randall's testimony, Walker testified that he was the one who drilled the three water wells on Walker's property using Randall's drill rig, that Randall gave the drill rig in payment for the work, and that Walker was responsible for ensuring that the wells were dug properly.

As Walker correctly points out, there is also conflicting evidence in the record, including Randall's deposition testimony that the parties were not "on the same page" regarding certain terms, and including Walker's testimony that he was not hired by Randall to drill the wells and that he could not and would not guarantee potable water. However, we are tasked with reviewing the evidence supporting the jury's verdict, and in that task we may disregard contrary evidence unless reasonable jurors could not.[12]

Emphasizing Randall's testimony regarding the specific terms of the agreement, Walker asserts on appeal that there is no evidence that the agreement is enforceable—i.e., no evidence of an offer, acceptance, mutual assent (including meeting of the minds), delivery, and consideration.[13] But as described above, Randall testified what the specific terms of the agreement were, that both he and Walker understood the terms, that Walker accepted those terms, and what the

---

[12] *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (citing *City of Keller*, 168 S.W.3d at 823.

[13] *See Texas Gas Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970); *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 449 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (element of enforceable contract). "Meeting of the minds" refers to the parties' mutual understanding of an assent to the subject matter and essential terms of a contract, *see 2001 Trinity*, 393 S.W.3d at 449, and whether the parties had a meeting of the minds is an objective determination based on the parties' statements and actions, not their subjective state of mind, *see Sadeghi v. Gang*, 270 S.W.3d 773, 776 (Tex. App.—Dallas 2008, no pet.).

9

consideration was. Further, both Walker and Randall testified that Walker drilled the three wells and that Randall gave Walker the drill rig as payment. Although Walker may be correct in asserting that Randall's testimony is contradictory, that fact is not dispositive under our legal-sufficiency standard of review for a JNOV.

Having reviewed the evidence, we hold that the evidence in the record supporting the jury's answer to Question 1 is legally sufficient.

**Question 2—breach**

Walker asserted in his JNOV motion that there is no evidence to support the jury's finding that Walker failed to comply with the well-digging agreement and, further, that "a fact was established to the contrary as a matter of law." In his JNOV motion, Walker did not elaborate on what "fact [had been] established to the contrary" and, on appeal, Walker does not address Question 2. Our review of the record shows that the evidence supporting the jury's answer to Question 2 is legally sufficient. For example, as described above, Randall testified that none of the wells that Walker drilled produced potable water. Further, Randall's expert witness testified that the water from these wells was harmful to humans and animals and full of sand. We hold that the evidence supporting the jury's answer to Question 2 is legally sufficient.

**Question 3—damages**

Walker's JNOV motion asserted that there was no evidence to support the jury's finding that Randall was damaged in the amount of $42,500. We disagree. The jury was instructed

10

that, in calculating the damages, it could consider the difference in the value of the work as agreed to by the parties and the value of the work actually performed. As noted above, the terms of the agreement were that Walker would drill the three good water wells in return for Randall giving him the drilling rig. Randall testified that the drilling rig cost him $75,000 plus $5,000 for shipping, and that the drilling rig was his payment to Walker for the three wells. Randall also testified that the three wells Walker drilled on his property had no value to him. Walker, in turn, disputed Randall's value for the drilling rig, testifying instead that he thought the value of the drilling rig was "about $40,000." The jury's answer of $42,500 was within the range damages supported by the evidence. Accordingly, we hold that the evidence supporting the jury's answer to Question 3 is legally sufficient.

**Question 4—attorney fees**

We also disagree with Walker's contention that there is no evidence to support the jury's finding of $30,845 for attorney fees. Randall's attorney testified at trial about his experience; that he was familiar with the fees customarily charged by attorneys in the State of Texas these types of suits; that he segregated his fees for breach of contract; and that his fees were necessary and reasonable in light of the injury sustained by Randall and the results obtained. Randall's attorney also testified about the amount and type of work he did in prosecuting Randall's contract claim and the total number of hours and hourly rate of Randall's attorneys. Finally, Randall's attorney testified in summary that the total of the reasonable and necessary fees incurred by Randall was $30,845, which is the amount the jury found to be Randall's attorney's reasonable and necessary fee. Walker

11

did not challenge this testimony, nor did he offer any evidence to the contrary. We hold that the evidence supporting the jury's answer to Question 4 is legally sufficient.

## Conclusion

Because the evidence supporting the jury's findings is legally sufficient, it was error for the district court to grant JNOV. Accordingly, we reverse the district court's JNOV and render judgment for Randall in accordance with the jury's findings.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Reversed and Rendered

Filed: April 13, 2017