

# NUMBER 13-17-00655-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**TEXAS POLITICAL SUBDIVISIONS PROPERTY/
CASUALTY JOINT SELF INSURANCE FUND,**           **Appellant,**

**v.**

**PHARR-SAN JUAN-ALAMO ISD,**           **Appellee.**

---

### On appeal from County Court at Law No. 4
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Perkes
### Memorandum Opinion by Justice Perkes

In this insurance-coverage dispute, appellant Texas Political Subdivisions Property/Casualty Joint Self Insurance Fund (TPS) filed a petition against appellee Pharr-San Juan-Alamo ISD (PSJA) seeking a declaration of its rights and obligations under an automobile liability policy (Auto Policy). PSJA countersued for declaratory relief and

breach of contract. Both parties moved for summary judgment, and the trial court rendered judgment in favor of PSJA, finding TPS breached its duties to defend and indemnify.

By four issues that we treat as three, TPS argues on appeal that the trial court erred by (1) denying its motion for summary judgment, (2) granting PSJA's motion for summary judgment, and (3) failing to apply the one satisfaction rule. Because neither party carried its summary judgment burden, we reverse and remand.

## I. BACKGROUND

Lorena Flores sued PSJA for damages sustained by a minor who, according to her petition, "was severely injured after being thrown from a golf cart" driven by a PSJA employee.[1] PSJA demanded that TPS defend and indemnify it in the underlying suit and TPS denied coverage.

The Auto Policy provides liability coverage as follows:

> [TPS] will pay all sums the [PSJA] legally must pay as damages because of **bodily injury** or **property damage** to which this self-insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto**.

> [TPS] has the right and duty to defend any **suit** asking for these damages. However, [TPS] has no duty to defend **suits** for **bodily injury** or **property damage** not covered by this self-insurance. [TPS] may investigate and settle any claim or **suit** as [TPS] or its authorized representative considers appropriate. [TPS]'s duty to defend or settle ends when the applicable Limit of Self-Insurance has been exhausted by payment of judgments or settlements.

---

[1] The suit is styled *Lorena Flores as Next of Friend of Alexis Flores v. Cristoval de la Garza, Jr. and Pharr-San Juan-Alamo ISD* and it was filed as Cause No. C-3073-11-I in the 398th Judicial District Court, Hidalgo County, Texas.

2

The bolded terms are given a specific meaning under the Auto Policy. An "auto" is defined as "a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include mobile equipment." "Mobile equipment" is defined, in part, as "vehicles designed for use principally off public roads."

TPS maintains that golf carts are necessarily "mobile equipment" under Texas law because the Texas Transportation Code defines a "golf cart" as "a motor vehicle designed by the manufacturer primarily for use on a golf course." *See* TEX. TRANSP. CODE ANN. § 502.001(18). In other words, TPS contends that a golf cart cannot, under any circumstances, be designed for use principally on public roads. As such, TPS concludes that the allegations in the underlying petition negate its duties to defend and indemnify PSJA. *See Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (per curiam) ("We now hold that the duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify."). TPS filed three separate traditional motions for summary judgment based on this argument, relying only on the Auto Policy and the petition in the underlying lawsuit to support its argument. *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006) ("Under the eight-corners or complaint-allegation rule, an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." (citing *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973))). The trial court denied each motion.

3

PSJA acknowledges that golf carts were traditionally designed primarily for use on a golf course, but argues the term has a broader meaning today because manufacturers now design and advertise *some* golf carts primarily for use on public roads. In a combined motion, PSJA filed a traditional motion for summary judgment on the duty to defend and a no-evidence motion on the duty to indemnify. To support its traditional motion on the duty to defend, PSJA submitted advertisements from golf cart manufacturer E-Z-GO's website that depicted people using several models of golf carts to perform everyday errands on public roads. One such advertisement says:

GO ON-ROADING

Inspired by get-up-and-go lifestyles, the 2-passenger E-Z-GO® 2Five™ is compact, offers ample storage and all the power you need to head out for errands, dinner or a leisurely drive. Fully electric, your only pit stop at the corner gas station will be for coffee or a Sunday paper.

The following picture accompanies the advertisement:



The standard features on this model include a speedometer, three-point seat belts, an automatic parking brake, a passenger side locking glove box, turn signals and four-way

4

flashers, headlights and taillights, brake lights, a rear-view mirror, and driver and passenger side mirrors.

PSJA argued that because the petition failed to describe the "golf cart" in question, a reasonable interpretation of the petition included a golf cart designed for use on a public road like those in the advertisements, thus triggering the duty to defend. *See GuideOne*, 197 S.W.3d at 310 ("A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend . . . ." (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965))). In its no-evidence motion on the duty to indemnify, PSJA argued "mobile equipment" was an exclusion under the Auto Policy; therefore, TPS carried the burden to prove that the loss falls within the exclusion. *See Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) (explaining "the insurer must prove the loss is within an exclusion" (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex. 2008))).

Unlike its own motions for summary judgment that relied exclusively on the argument that *all* golf carts are mobile equipment as a matter of law, TPS responded to PSJA's combined motion with evidence that the golf cart in *this* case was designed for use principally off public roads. TPS attached the deposition testimony of Orlando Garcia, athletic director for PSJA, who described the golf cart in this case as "a standard golf cart." He later added, "I would take it as [a] normal golf cart you would see at a golf course."

5

The golf cart was purchased for the athletic department to transport water and equipment between the various sports fields at the high school. To that end, the golf cart was fitted with "a flatbed in the back."

TPS also attached an affidavit by Orlando Garcia that stated:

> The golf cart involved in the incident made the basis of Lorena Flores' [sic] lawsuit against [PSJA] was purchased by [PSJA] on or about June 23, 2008.
>
> This golf cart was acquired by [PSJA] for the purpose of transporting heavy equipment to athletic fields on [PSJA] property.
>
> The golf cart was customized after its acquisition by the addition of a wooden bed in the back. This wooden bed was used to transport equipment, supplies and heavy water coolers on [PSJA] property. Any other use of the golf cart was incidental. Use of the golf cart to transport people was not authorized by [PSJA], and students were not allowed to drive the carts under any circumstances.

While this case was pending, a final judgment was entered against PSJA in the underlying lawsuit and damages were awarded in the total amount of $100,000, based on the statutory cap in the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.023(b).

PSJA's general liability carrier defended PSJA in the underlying lawsuit for approximately eighteen months before denying coverage. In addition to its counterclaims against TPS, PSJA brought third-party claims against its general liability carrier for declaratory relief and breach of contract. Those parties settled PSJA's third-party claims for an undisclosed amount just prior to the trial court granting PSJA's combined motion against TPS. TPS requested a settlement credit under the one-satisfaction rule. *See Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 106 (Tex. 2018) ("Under the one satisfaction rule, a plaintiff is entitled to only one recovery for

6

any damages suffered." (quoting *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000))). The trial court did not apply a settlement credit and the final judgment against TPS included an award of $129,806.20 in attorney's fees and $100,000 to indemnify PSJA for the damages awarded in the underlying lawsuit. This appeal ensued.

## II. STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). To prevail on a traditional motion for summary judgment, the movant must establish that no issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the movant establishes a right to summary judgment, the burden shifts to the nonmovant to raise an issue that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). We review the propriety of a summary judgment by taking all evidence favorable to the nonmovant as true, indulging every reasonable inference in favor of the nonmovant, and resolving any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005) (citing *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). "[A] motion for summary judgment must itself expressly present the grounds upon which it is made. A motion must stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) (interpreting Texas Rule of Civil Procedure 166a(c)).

"On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law." *City of Garland v. Dall.*

7

*Morning News*, 22 S.W.3d 351, 356 (Tex. 2000) (citing *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex. 1993)). In other words, a party cannot prevail simply because the other party failed to carry its burden. *See id.* If neither party carried its burden, the reviewing court should reverse and remand the case to the trial court. *Ohio Cas. Ins. Co. v. Time Warner Entm't Co.*, 244 S.W.3d 885, 887–88 (Tex. App.—Dallas 2008, pet. denied) (citing *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 50 (Tex. App—Dallas 2006, pet. denied)); *Calhoun v. Killian*, 888 S.W.2d 51, 54 (Tex. App.—Tyler 1994, writ denied) (citing *Al's Formal Wear of Hous., Inc. v. Sun*, 869 S.W.2d 442, 444 (Tex. App.—Houston [1st Dist.] 1993, writ denied)).

### III.  INTERPRETATION RULES FOR INSURANCE POLICIES

In resolving an insurance coverage dispute, we apply the rules of contract construction. *Nassar v. Liberty Mut. Fire Ins. Co.*, 408 S.W.3d 254, 257 (Tex. 2017) (citing *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009)). In applying these rules, our primary concern is to ascertain the parties' intent as expressed in the language of the policy. *Id.* at 258 (citing *Tanner*, 289 S.W.3d at 831). We must consider all the provisions with reference to the entire policy; no single provision will be controlling. *Id.* (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)).

If the language of a contract "lends itself to a clear and definite legal meaning, the contract is not ambiguous and will be construed as a matter of law." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). A contract is not ambiguous simply because the parties disagree on its interpretation. *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018) (citing *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 787

(Tex. 2017)). "If we determine that only one party's interpretation of the insurance policy is reasonable, then the policy is unambiguous, and the reasonable interpretation should be adopted." *Nassar*, 408 S.W.3d at 258 (citing *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 119 (Tex. 2015)).

## IV. DISCUSSION

### A. Duty to Indemnify

The parties disagree whether the distinction between an "auto" and "mobile equipment" is a matter of coverage or an exclusion. This is an important question because it determines which party carried the burden of proof. *See Gilbert Tex. Const.*, 327 S.W.3d at 124 (explaining the insured carries the initial burden to prove coverage and then the burden shifts to the carrier to prove an exclusion applies). We conclude the Auto Policy is subject to only one reasonable meaning. *See Nassar*, 408 S.W.3d at 258 (citing *RSUI*, 466 S.W.3d at 119).

If the Auto Policy contained a "mobile equipment exclusion," we would expect to find it under one of two subsections in the policy titled "Exclusions." *See id.* (explaining that intent is determined by considering the entire policy). None exists. Instead, "mobile equipment" is a defined term in the "Definitions" section of the policy that informs the meaning of a covered "auto." A covered "auto" includes "a land motor vehicle, trailer or semitrailer designed for travel on public roads *but does not include* mobile equipment," which are defined as "vehicles designed for use principally off public roads." (Emphasis added). Thus, the two defined terms work in tandem to delineate the scope of coverage under the policy. Simply put, an "auto" is covered; "mobile equipment" is not. If all golf

9

carts constitute "mobile equipment," as TPS argues, there is no coverage in the first instance.

It was PSJA's initial burden to establish coverage. *See Gilbert Tex. Const.*, 327 S.W.3d at 124. By the plain language of the Auto Policy, PSJA was required to establish that golf carts are covered "autos" and not "mobile equipment." As a consequence, it was improper for PSJA to file a no-evidence motion for summary judgment on the duty to indemnify. *See* TEX. R. CIV. P. 166a(i); *Gilbert Tex. Const.*, 327 S.W.3d at 124. Because that was the only ground PSJA presented on the duty to indemnify, we reverse that portion of the trial court's summary judgment concerning the duty to indemnify. *See McConnell*, 858 S.W.2d at 341.

## B. Duty to Defend

An insurer's duty to defend its insured is distinct and separate from its duty to indemnify. *Griffin*, 955 S.W.2d at 82 (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex. 1997)). Generally, the duty to defend is determined by comparing the facts alleged in the underlying lawsuit with the policy terms without regard to the truth or falsity of the allegations. *GuideOne*, 197 S.W.3d at 308 (citing *Maupin*, 500 S.W.2d at 635). This is often referred to as the "eight-corners rule." *Id.* "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam) (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). Any doubts will be resolved in the insured's favor. *Id.* (quoting *Heyden*, 387 S.W.2d at 26).

10

As a preliminary matter, we address the fact that PSJA submitted extrinsic evidence to support its traditional motion for summary judgment on the duty to defend and TPS responded with its own extrinsic evidence.   Under the eight-corners rule, "[f]acts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination."   *GuideOne*, 197 S.W.3d at 308 (citing *Fast Motor Lines*, 939 S.W.2d at 141).

Although the Supreme Court of Texas has not "expressly recognized an exception to the eight-corners rule," it has recognized that our Court and others allow the introduction of extrinsic evidence that is relevant to coverage but does not touch upon the merits of the underlying suit.   *Id.* at 308 n.2 (citing *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452–53 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied); *Gonzales v. Am. States Ins. Co.*, 628 S.W.2d 184, 187 (Tex. App.—Corpus Christi–Edinburg 1982, no writ); *Cook v. Ohio Cas. Ins. Co.*, 418 S.W.2d 712, 715–16 (Tex. App.—Texarkana 1967, no writ); *Int'l Serv. Ins. Co. v. Boll*, 392 S.W.2d 158, 161 (Tex. App.—Houston 1965, writ ref'd n.r.e.); *W. Heritage Ins. Co. v. River Entm't*, 998 F.2d 311, 313 (5th Cir. 1993); *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 621–22 (E.D. Tex. 2003)).   Under our precedent, extrinsic evidence is admissible "when doing so does not question the truth or falsity of any facts alleged in the underlying petition."   *Wade*, 827 S.W.2d at 453.

The parties submitted extrinsic evidence relevant to the two fundamental coverage questions:   (1) whether all golf carts are designed for use principally off public roads; and (2) if not, was the golf cart in the underlying lawsuit designed for use principally off public roads.   This evidence is properly before us because it was immaterial to the merits of the

11

underlying lawsuit, which sought to establish PSJA's liability through its employee's negligent operation of the golf cart.   *See id.*; *Am. States Ins. Co.*, 628 S.W.2d at 187.

### 1.    TPS's Motion for Summary Judgment

By its first issue, TPS contends that, as a matter of law, all golf carts are "mobile equipment" (i.e., principally designed for use off public roads) because the Texas Transportation Code defines a "golf cart" as "a motor vehicle designed by the manufacturer primarily for use on a golf course."   TEX. TRANSP. CODE ANN. § 502.001(18). Thus, TPS contends that the allegations in the underlying lawsuit can only be interpreted in a single way, which brings the case outside the policy's coverage.   While we agree that some, if not most, golf carts are principally designed for use on a golf course, we disagree that this traditional notion of a golf cart is the only "potential" definition.   *See Fast Motor Lines*, 939 S.W.2d at 141.

As PSJA's summary-judgment evidence makes clear, the term "golf cart" has an expanded meaning in today's lexicon.   *See Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 153–54 (Tex. 2010) (per curiam) ("When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides . . . ." (citing *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004))).   We agree with PSJA that a person would describe the motor vehicle in the above advertisement as a "golf cart."   Yet, the manufacturer was not advertising it for use on a golf course, describing the four-passenger version of that particular model as "A New Spin on the Family Sedan."

12

Beyond the manufacturer's description, the design of these golf carts—the key inquiry under the Auto Policy—goes well beyond normal golf-course use. Many of the design features, such as a speedometer, three-point seat belts, turn signals, headlights and taillights, a rear-view mirror, and driver and passenger side mirrors, would be superfluous to a golfer. Instead, these features were designed, as the manufacturer described it, to "GO ON-ROADING."

Despite narrowly defining the term under the transportation code, Texas law allows "on-roading" in a "golf cart." *See* TEX. TRANSP. CODE ANN. § 551.404(a), (a-1) (permitting municipalities and certain counties to authorize the operation of "golf carts" on public roads with a posted speed limit that does not exceed 35 miles per hour); *see, e.g.*, ARANSAS PASS, TEX., CODE OF ORDINANCES, ch. 28, art. VI, §§ 28.101–.108 (2019). Consistent with the models in the advertisements, these golf carts must have specific design features that improve safety on public roads but have little to no practical use on a golf course. *See* TEX. TRANSP. CODE ANN. § 551.404(b) (including headlamps and mirrors); ARANSAS PASS, TEX., CODE OF ORDINANCES, ch. 28, art. VI, § 28.106(10) (2019) (adding seatbelts to the requirements under § 551.404(b)).

Without providing any further description, the pleading in the underlying lawsuit merely alleges the minor "was severely injured after being thrown from a golf cart." We conclude that a liberal interpretation of this threadbare accusation potentially included a "golf cart" designed for use principally on public roads, just as those depicted in PSJA's summary-judgment evidence. *See Fast Motor Lines*, 939 S.W.2d at 141. Therefore, TPS was not entitled to summary judgment on its purely legal argument that *all* golf carts,

13

without exception, are designed for use principally off public roads.   We overrule TPS's first issue.

## 2.    PSJA's Traditional Motion for Summary Judgment

By its second issue, TPS argues that PSJA failed to establish its right to summary judgment on the duty to defend.   We agree.   Although PSJA established the possibility that *some* golf carts may be a covered "auto," TPS brought forward a material fact issue in its summary-judgment response that precludes PSJA's right to summary judgment. *See Clear Creek Basin Auth.*, 589 S.W.2d at 678.   Specifically, PSJA's athletic director described the golf cart in *this* case as "a standard golf cart" used to transport equipment and water between athletic fields, a "normal golf cart you would see at a golf course."   In other words, it was not one of those *other* "golf carts" depicted in the advertisement.   *See City of Keller*, 168 S.W.3d at 824 (explaining that summary-judgment evidence must be viewed in the light most favorable to the nonmovant).

Additionally, on January 20, 2012, long before PSJA filed its motion for summary judgment in 2016, the attorney representing PSJA in the underlying lawsuit offered a similar assessment in an internal status report that was attached to PSJA's combined motion for summary judgment:

> The golf cart is owned by [PSJA] and assigned to the Athletic Department. The golf cart is an older model, electric type *commonly seen on golf courses* and is powered by an electric motor with rechargeable batteries.   Currently, the cart is out of service because of acid leaks from the batteries.   The cart is *not street legal* and is used only on campus property, mainly from the field house to the athletic fields.   It travels mainly on sidewalks, short internal streets, parking lots and athletic fields and tracks.

(Emphasis added).

Of course, as the owner of the golf cart, it should have been readily apparent to PSJA whether it was a "normal golf cart you would see at a golf course" or designed to "GO ON-ROADING." This is not a case that required the development of a record in the underlying suit to determine coverage; either PSJA's golf cart is designed like the one in the above advertisement or it is not, and the answer to that question will resolve both the duty to defend and the duty to indemnify. *See Griffin*, 955 S.W.2d at 84.

In sum, PSJA's theoretical argument about what the golf cart *could be* cannot be considered in a vacuum; instead, we must look at all of the summary judgment evidence in the record. *See Global Enercom*, 323 S.W.3d at 153–54. Based on the record before us, TPS has clearly raised a material fact question about the design of the golf cart in *this* case. Accordingly, we sustain TPS's second issue.

We recognize that when parties file cross motions for summary judgment and the trial court grants one motion and denies the other, it is generally appropriate for the reviewing court to render the judgment the trial court should have rendered. *Fielding*, 289 S.W.3d at 848 (citing *Comm'rs Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)). However, that principle of appellate review presupposes that the parties have asked the trial court to consider the correct questions. *See id.* ("[W]e review the summary judgment evidence presented by both sides and determine *all questions presented*." (emphasis added) (citing *Agan*, 940 S.W.2d at 81)). After all, "[a] motion [for summary judgment] must stand or fall on the grounds expressly presented in the motion." *McConnell*, 858 S.W.2d at 341. Because TPS limited itself to an eight-corners argument in its motion for summary judgment, we will not decide whether the extrinsic evidence in this case conclusively precludes coverage. *See id.* Instead, because neither party

15

carried its burden on the grounds presented in their motions, we must reverse the judgment and remand the case to the trial court. *See Ohio Cas. Ins. Co.*, 244 S.W.3d at 887–88; *Killian*, 888 S.W.2d at 54.

## V. CONCLUSION

We reverse the trial court's judgment and remand the case to the trial court for further proceedings.[2]

GREGORY T. PERKES
Justice

Delivered and filed the
26th day of September, 2019.

---

[2] In light of our conclusion that summary judgment was improper, we do not reach TPS's third issue on its entitlement to a settlement credit under the one-satisfaction rule. *See* TEX. R. APP. P. 47.1.

16