# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00766-CV

---

**Will Daugherty, Appellant**

**v.**

**AmTrust Insurance Company of Kansas, Inc., Appellee**

---

**FROM THE 169TH DISTRICT COURT OF BELL COUNTY**
**NO. 22DCV330695, THE HONORABLE CARI L. STARRITT-BURNETT, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Will Daugherty challenges the trial court's order granting appellee AmTrust Insurance Company of Kansas, Inc.'s traditional and no-evidence summary-judgment motion. Daugherty sued AmTrust for breach of contract, breach of warranty, promissory estoppel, and declaratory judgment after AmTrust denied him liability coverage for a motor-vehicle accident that occurred in 2018. AmTrust denied coverage based on a named-driver exclusion that AmTrust required Daugherty to sign at the time it issued him a commercial auto-insurance policy in 2016 because he did not have a valid driver's license. Because we conclude that the trial court correctly held that this exclusion prevented Daugherty's recovery on his claims as a matter of law, we affirm.

BACKGROUND

Daugherty owns a sole-proprietorship plumbing business called Daugherty Plumbing. Daugherty first obtained a commercial auto policy from AmTrust in May 2016. The policy covered several vehicles owned by Daugherty and used for his business. At the time that Daugherty sought coverage and the policy was issued, Daugherty did not have a valid driver's license. Although "Will Daugherty DBA: Daugherty Plumbing" is listed as the "Named Insured" on the policy, because Daugherty did not have a valid driver's license, AmTrust required him to sign a form titled "Named Driver Exclusion," which explained that AmTrust would not provide any coverage for any "accident" or "loss" that occurred while Daugherty was driving a covered auto. Daugherty's insurance agent sent him the Named Driver Exclusion form along with an email that stated in pertinent part:

> The carrier is requiring that we have the attached driver exclusion form signed for Will because his license isn't currently active but he's the owner of the company. Once Will get's [sic] his license active, please let me know so I can put a request into the carrier to add him on as an active driver.

Daugherty signed the endorsement excluding him from the policy's coverage via DocuSign on May 5, 2016.

The Named Driver Exclusion endorsement that Daugherty signed in May 2016 continued to be included in and effective with each of his policy renewals in 2017 and 2018. Daugherty never notified AmTrust that his driver's license had been reinstated.[1] The renewal

---

[1] Daugherty's testimony on the status of his driver's license is contradictory. At his deposition, he testified that his driver's license remained suspended until November 21, 2022. In the affidavit attached to his summary-judgment response, he attested that he "had his license back" by April 2017. This disputed fact is not material to the resolution of the summary judgment, however, because there is no dispute that he never notified AmTrust that he had a

policy in effect when Daugherty had a motor-vehicle accident in November 2018 contains endorsement CA990003 0206, which lists Daugherty as a named excluded driver.

When the accident occurred, Daugherty was driving one of the vehicles covered under the policy and listed on the Texas Insurance Identification Card provided with the policy. Daugherty's name and address were listed under "Insured" on the Identification Card. The other driver filed suit against Daugherty for personal injury and property damages related to the accident. Daugherty filed a claim with AmTrust for coverage and for defense against the other driver's claims, as well as a claim for coverage of property damage to Daugherty's vehicle. AmTrust declined to defend or indemnify Daugherty based on the Named Driver Exclusion endorsement on the policy.

Daugherty sued AmTrust, seeking damages for breach of contract and breach of warranty. AmTrust filed a traditional and no-evidence summary-judgment motion, asserting that (1) it did not breach the contract because the policy does not provide coverage for an accident involving an excluded driver and (2) it did not breach any warranty because Daugherty cannot show any affirmation or promise separate from the policy upon which he relied when he purchased the policy. Daugherty subsequently filed an amended petition in which he added a promissory-estoppel claim and a claim seeking a declaratory judgment that he is entitled under the liability portions of the policy to recover the cost of the defense of the suit against him and payment of any sums within policy limits that he must pay as damages. As support for his claims, Daugherty asserted that the Texas Insurance Identification Card issued with the policy, which lists his name as "Insured," supersedes and modifies the Named Driver Exclusion

valid driver's license, and the Named Driver Exclusion form remained a part of each of his renewal policies in 2017 and 2018.

3

endorsement, or in the alternative, that the provisions of the policy and the provisions of the Texas Insurance Identification Card are ambiguous and contradictory when read together and thus should be construed in favor of coverage.[2]

AmTrust addressed these new allegations in its reply to Daugherty's summary-judgment response, asserting that its summary-judgment motion was broad enough to cover the newly added causes of action. AmTrust argued that because Daugherty cannot offer evidence of a promise that he relied upon when purchasing the policy, his promissory-estoppel claim fails for the same reason that his breach-of-warranty claim fails. AmTrust further argued that Daugherty's request for a declaratory judgment mirrors his breach-of-contract claim, and thus, the Named Driver Exclusion endorsement precludes recovery on that claim, too.[3]

The trial court conducted a hearing on AmTrust's summary-judgment motion. At the hearing, AmTrust argued that the Named Driver Exclusion precludes Daugherty's recovery on his claims and that the Texas Insurance Identification Card was neither a separate promise to provide coverage for Daugherty as a driver nor a change to the terms of the policy. It contended

---

[2] Daugherty also referenced a "Designated Insured for Covered Autos Liability Coverage" endorsement issued with the policy as superseding and modifying the Named Driver Exclusion endorsement or rendering the policy ambiguous and contradictory, but on appeal, he argues only that the Texas Insurance Identification Card creates a conflict with the Named Driver Endorsement regarding liability coverage, or in the alternative, renders the policy ambiguous.

[3] AmTrust filed a motion for leave to file an amended answer on the same day that it filed its summary-judgment reply, which was the day before the summary-judgment hearing. It sought to amend its answer to add the Named Driver Exclusion as an affirmative defense. Daugherty did not oppose the motion for leave and acknowledged at the summary-judgment hearing that he did not claim that AmTrust's filing would operate as a surprise that would preclude the filing of an amended answer. *See* Tex. R. Civ. P. 63 (requiring leave of court to file amended pleading within seven days of date of trial but providing that "leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party"). The trial court did not sign an order granting AmTrust's motion for leave to file the amended answer before signing the summary-judgment order.

4

that its summary-judgment motion adequately addressed Daugherty's newly added claims, but it requested that if the trial court did not agree, that it grant a partial summary judgment on the breach-of-contract and breach-of-warranty claims and remove the case from the jury-trial docket so that AmTrust could file a new motion addressing the newly added claims. Daugherty did not argue that AmTrust's summary-judgment arguments did not adequately address its newly added claims. The trial court signed an order granting AmTrust's summary-judgment motion.

Daugherty subsequently filed a notice of appeal from the trial court's "Final Judgment," which he stated "disposes of all parties and the entire case before the court."

## ANALYSIS

Daugherty challenges the summary judgment in three issues. First, he asserts that we should resolve the alleged conflict between the Texas Insurance Identification Card and the Named Excluded Driver endorsement by concluding that the liability-coverage portions of the Texas Insurance Identification Card control because they are latest in time. Second, he argues that these allegedly conflicting coverage portions of the policy are subject to more than one reasonable interpretation, rendering the policy ambiguous and requiring us to construe the policy in the way that favors Daugherty, as the insured. Third, Daugherty contends that there is more than a scintilla of evidence creating a genuine issue of material fact about whether he "relied upon the specific promise" on the Texas Insurance Identification Card. We will consider the first and second issues, which relate to his breach-of-contract and declaratory-judgment claims, and analyze whether any conflict or ambiguity exists in the policy before turning to Daugherty's issue asserting that the Card's language constitutes a separate promise of coverage, which relates to his breach-of-warranty and promissory-estoppel claims.

5

**Standard of review**

We review an order granting summary judgment de novo. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 72 (Tex. 2023). We examine the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in the nonmovant's favor and resolving any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

To prevail on a traditional summary-judgment motion, the movant has the burden to prove that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021); Tex. R. Civ. P. 166a(c). In contrast, a party may obtain a no-evidence summary judgment when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). A no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact for each element contested in the motion. *JLB Builders*, 622 S.W.3d at 864 (citing Tex. R. Civ. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). Courts will sustain a no-evidence point under these circumstances:

> when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997)).

**Relevant policy language and law**

AmTrust submitted the 2018 commercial policy issued to Daugherty as summary-judgment evidence. The policy states that it consists of "Declarations, Common Policy Conditions, One or More Coverage Parts, and Applicable Forms and Endorsements." (Formatting, capitalization, and punctuation altered.) The policy lists "Will Daugherty" as the Named Insured and provides coverage for seven business vehicles owned by Daugherty. "Auto ID Card" and "Named Driver Exclusion" are among the forms and endorsements listed on the "Commercial Common Policy Declarations Forms and Endorsements Schedule." A Texas Insurance Identification Card is included for each of the covered vehicles, including the one Daugherty was driving when he was involved in the motor-vehicle accident.

The issues in this case center on the language both in the Named Driver Exclusion endorsement and in the Texas Insurance Identification Card. The Texas Insurance Identification Card is an insurance form that the Texas Department of Insurance requires liability insurers to issue.

The Named Driver Exclusion endorsement that Daugherty signed in 2016 provides as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**NAMED DRIVER EXCLUSION**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

**Name of Excluded Driver:** Will Daugherty

We will not pay for any claim arising from an "accident" or "loss" which occurs while a covered "auto" is being driven, either with or without your permission, by the person listed above as an Excluded Driver.

None of the coverages provided by the policy apply to any injury, "loss" or damage sustained by any "insured" or any other person or organization because of the "accident" when the Excluded Driver named above is involved in an "accident" while operating a covered "auto". If we should be obligated to pay for any loss incurred while the Excluded Driver is operating a covered "auto" in order to comply with a compulsory insurance or financial responsibility law, you agree to reimburse us for all such payments and expense.

You also agree that this endorsement will serve as a rejection of uninsured/underinsured motorist coverage and personal injury protection coverage while a covered "auto" or any other motor vehicle is operated by the Excluded Driver.

Daugherty signed via DocuSign in the "Accepted by" blank for "(Signature of First Named Insured or officer or partner of the First Named Insured)"; "First Named Insured" was in the blank space after "Title." An identical but unsigned copy of the endorsement is included in the 2018 renewal policy.[4]

The front side of the Texas Insurance Identification Card issued with the 2018 renewal policy, which identifies Daugherty as the "Insured," is reproduced here.

---

[4] The claims manager whose declaration was submitted by AmTrust as part of its summary-judgment evidence attested that the same Named Driver Exclusion endorsement was also included in the first renewal of the policy issued in 2017.

TEXAS INSURANCE IDENTIFICATION CARD

| | | SPANISH TRANSLATION |
|---|---|---|
| | | TRADUCCION DE ESPANOL |

COMPANY NUMBER
15954

COMPANY
AmTrust Insurance Company of Kansas, Inc

POLICY NUMBER
KPP1038200 02

EFFECTIVE DATE
4/25/2018

EXPIRATION DATE
4/25/2019

YEAR    MAKE/MODEL
2011    CHEVROLET SILVERADO C1500 LS

VEHICLE IDENTIFICATION NUMBER
1GCRCREA3BZ190976

AGENCY/COMPANY ISSUING CARD
Builders & Tradesmen's Insurance Services, Inc.
6610 Sierra College Blvd
Rocklin CA 95677-0000

AGENCY PHONE NO.
(916) 772-9200

INSURED
WILL DAUGERTY
11683 LANDFILL RD
HOLLAND TX 76534

This policy provides at least the minimum amounts of liability insurance required by the Texas Motor Vehicle Safety Responsibility Act for the specified vehicle and named insureds and may provide coverage for other persons and other vehicles as provided by the insurance policy.

The Texas Transportation Code and Texas Department of Insurance regulations control the issuance of the Texas Insurance Identification Card. The Texas Motor Vehicle Safety Responsibility Act mandates that "[a] person may not operate a motor vehicle in this state unless financial responsibility is established for that vehicle" through a motor-vehicle liability insurance policy, a surety bond, certain types of deposits, or self-insurance. Tex. Transp. Code § 601.051. The Act sets forth the statutory requirements for establishing financial responsibility through motor-vehicle liability insurance. *See id.* §§ 601.071-.088. The Department regulates the state's insurance industry, including the provision of automobile insurance. *See generally* 28 Tex. Admin. Code §§ 5.11-.611 (Tex. Dep't of Ins., Subchapter A, Automobile Insurance).

The Department's regulations require that "[f]or each motor vehicle insurance policy, the liability insurer must issue a standard proof of motor vehicle liability insurance form."

9

*Id.* § 5.204(b) (2020) (Tex. Dep't of Ins., Motor Vehicle Safety Responsibility).[5] The Texas Transportation Code provides as follows:

> (b)    A standard proof of motor vehicle liability insurance form prescribed by the Texas Department of Insurance must include:
>
> (1) the name of the insurer;
>
> (2) the insurance policy number;
>
> (3) the policy period;
>
> (4) the name and address of each insured;
>
> (5) the policy limits or a statement that the coverage of the policy complies with the minimum amounts of motor vehicle liability insurance required by this chapter; and
>
> (6) the make and model of each covered vehicle.

Tex. Transp. Code § 601.081; *see also* 28 Tex. Admin. Code § 5.204(c)(1)-(8) (2020) (Tex. Dep't of Ins., Motor Vehicle Safety Responsibility). In addition to this statutorily mandated information, the Department requires that the following statement be included on the front of each insurance card:

> This policy provides at least the minimum amounts of liability insurance required by the Texas Motor Vehicle Safety Responsibility Act for the specified vehicles and named insureds and may provide coverage for other persons and vehicles as provided by the insurance policy.

28 Tex. Admin. Code § 5.204(c)(8).

---

[5] For convenience, we cite the current version of the Transportation Code and the Department regulations, although both have been amended since the accident occurred in 2018. The amendments are not relevant to the issues in this case.

Section 5.204 requires that the back (Side B) of the card "must contain the following statements, in this order, and formatted as shown in this subsection . . . :"

(1) Texas Liability Insurance Card (at least 12-point, boldfaced type)

(2) Keep this card. (boldfaced type)

(3) IMPORTANT: You must show this card or a copy of your insurance policy when you apply for or renew your: ("IMPORTANT" in boldfaced capital letters)

  (A) Motor vehicle registration

  (B) Driver's license

  (C) Motor vehicle safety inspection sticker.

(4) You may also be asked to show this card or your policy if you have an accident or if a peace officer asks to see it.

(5) All drivers in Texas must carry liability insurance on their vehicles or otherwise meet legal requirements for financial responsibility. If you do not meet your financial responsibility requirements, you could be fined up to $1,000, your driver's license and motor vehicle registration could be suspended, and your vehicle could be impounded for up to 180 days (at a cost of $15 per day).[6]

*Id.* § 5.204(d). The Insurance Card is not required to contain a listing of all the terms and conditions of coverage. With this background law and relevant policy language in mind, we turn to Daugherty's issues presented.

**I.      There is no conflict or ambiguity within the policy.**

Daugherty's first two issues require us to construe the policy language. We "construe insurance policies 'using ordinary rules of contract interpretation.'" *Nassar v. Liberty*

---

[6] The Spanish-language translation that insurers are also required to make available has been omitted from the quoted portion of the regulation.

11

*Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017) (quoting *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009)). "Our cardinal concern is determining the parties' intent as reflected in the terms of the policy itself." *Tanner*, 289 S.W.3d at 831. Thus, we give policy language its plain, ordinary meaning unless something else in the policy shows that the parties intended a different or technical meaning. *Id.* We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).

Whether a contract is ambiguous is a question of law for the court to decide. *National Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam). "While parol evidence of the parties' intent is not admissible to create an ambiguity," we may examine the contract in light of the surrounding circumstances present when the contract was entered to determine whether an ambiguity exists. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). "An ambiguity does not arise simply because the parties offer conflicting interpretations." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 119 (Tex. 2015) (quoting *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). The terms "ambiguous" and "ambiguity" mean something more specific than a mere lack of clarity in language. *Id.* If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *CBI Indus.*, 907 S.W.2d at 520 (citing, e.g., *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). "If, after applying these rules, a contract is subject to two or more reasonable interpretations, it is ambiguous." *Balandran*, 972 S.W.2d at 741.

If we conclude the policy is ambiguous, we resolve the uncertainty by adopting the construction that most favors the insured. *RSUI*, 466 S.W.3d at 118. "[A]nd because we are

12

construing a limitation on coverage, we must do so 'even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Id.* (quoting *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

In its summary-judgment motion, AmTrust argued that Daugherty cannot establish the breach element of his breach-of-contract claim because he cannot establish that he had liability coverage under the policy as a driver. *See Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014) ("The insured has the initial burden to establish coverage under the insurance policy."). On appeal, Daugherty contends that the Texas Insurance Identification Card's language conflicts with the Named Driver Exclusion in a way that renders the policy ambiguous. He asserts that the language on the Identification Card stating that the "policy provides at least the minimum amounts of liability insurance required by the Texas Motor Vehicle Safety Responsibility Act for the specified vehicles and named insureds and may provide coverage for other persons and vehicles as provided by the insurance policy" may be reasonably interpreted to mean that Daugherty, as the Named Insured, "is covered by the liability coverages of the Policy." The Named Driver Exclusion, on the other hand, states that AmTrust "will not pay for any claim arising from an 'accident' or 'loss' which occurs while a covered 'auto' is being driven, either with or without your permission, by the person listed above as an Excluded Driver." Daugherty asserts that this language may be reasonably interpreted to mean that "Daugherty is not covered by the liability coverages of the Policy," and thus, these conflicting coverage statements "are patently ambiguous, unless they can be reconciled within the four corners of the Policy."

13

Daugherty raises two issues based on this alleged conflict. First, he argues that we may resolve the conflict within the four corners of the policy by determining that the Insurance Card issued with the 2018 policy supersedes or modifies the 2016 "coverage language carried forward in the unsigned [Named Driver Exclusion] form contained in the 2018 renewal policy because it is later in time." We find this argument unpersuasive. As AmTrust points out, "It is the general rule that a renewal of an insurance policy constitutes a separate and distinct contract for the period of time covered by the renewal." *Hartland v. Progressive Cnty. Mut. Ins. Co.*, 290 S.W.3d 318, 322 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Therefore, the Insurance Card issued with the 2018 policy was issued and effective for the same time period as the Named Driver Exclusion endorsement included with that renewal policy. Accordingly, we overrule Daugherty's first issue.

Second, Daugherty contends that if we do not reconcile his two purportedly conflicting reasonable interpretations in this way, we must conclude that the policy is ambiguous and construe it liberally in his favor, as the insured. We disagree that Daugherty's proposed interpretation of the Insurance Card is a reasonable one. As required by the Transportation Code and Department regulations, the Insurance Card accurately states "the name and address of each insured" as it is stated on the Declarations Page of the policy, which identifies Daugherty as the Named Insured. *See* Tex. Transp. Code § 601.081(b)(4); 28 Tex. Admin. Code § 5.204(c)(1). The Insurance Card also contains the statement mandated by the Department that the "policy provides at least the minimum amounts of liability insurance required by the Texas Motor Vehicle Safety Responsibility Act for the specified vehicles and named insureds and may provide coverage for other persons and vehicles as provided by the insurance policy." However, contrary to Daugherty's argument, this standardized required language does not alter the terms

14

and conditions of the policy negotiated by AmTrust and Daugherty, nor does it indicate that AmTrust mistakenly issued the Insurance Card to Daugherty if he is not covered under the liability coverage of the policy.

As a condition of its issuance of the policy, AmTrust required Daugherty to agree to the Named Driver Exclusion endorsement, which specifically excludes him from liability coverage as a driver. He is listed as the Named Insured on the Declarations Page of the policy and on the Insurance Card because he is the owner of the policy and of the insured vehicles. *See* Tex. Transp. Code § 601.081(b)(4); 28 Tex. Admin. Code § 5.204(c)(1). Although Daugherty does not have liability coverage *as a driver*, he is the "insured" for other coverages provided under the policy, including physical-damage coverage for the vehicles that he owns and for vicarious liability as an employer if one of his employees causes an accident while operating a covered vehicle. The Insurance Card thus accurately reflects his status as a Named Insured and his vehicle's status as a covered vehicle. AmTrust did not mistakenly issue the statutorily required Insurance Card to him, and the required standardized language on the Insurance Card does not modify the Named Driver Exclusion endorsement.[7]

_____

[7] Our examination of the circumstances present at the time the parties entered the contract does not disclose any mutual intent by the parties to modify the Named Driver Exclusion (expressly required by AmTrust) with the Texas Insurance Identification Cards that are statutorily required to be issued with the policy. While the operative time that the parties entered into the contract is 2016, we would reach the same conclusion if we considered the renewal of the existing policy in 2018 to be the time that the parties entered into the contract. *See Safeway Managing Gen. Agency for State & Cnty. Mut. Fire Ins. Co. v. Cooper*, 952 S.W.2d 861, 867 (Tex. App.—Amarillo 1997, no writ) ("Just as one party may not unilaterally create a binding contract or modify an existing contract, . . . it may not change the terms of a renewed contract without the agreement of the other party." (citation omitted)). Daugherty does not contend that the Named Driver Exclusion was not carried forward and effective in each renewal policy in 2017 and 2018, nor does he contend that in 2016 he was issued a Texas Identification Insurance Card that differed from the cards issued in 2017 and 2018 that listed him as the named insured.

In addition, it is a general rule of contract construction that a contract should not be construed in a way that renders any of its terms meaningless. *See Blaylock v. American Guar. Bank Liab. Ins. Co.*, 632 S.W.2d 719, 722 (Tex. 1982) (concluding that reading one exclusion as precluding coverage would render another exclusion meaningless); *see also, e.g., Gilbert Tex. Constr.*, 327 S.W.3d at 126. Daugherty's proposed construction would render the Named Driver Exclusion endorsement meaningless, and thus, it is not a reasonable interpretation of the policy language. We conclude that the written contract is worded in a way that "can be given a definite or certain legal meaning," and therefore, it is not ambiguous. *CBI Indus.*, 907 S.W.2d at 520. We overrule Daugherty's second issue.

Because the Named Driver Exclusion endorsement excludes Daugherty from liability coverage as a driver, Daugherty cannot carry his burden to establish coverage under the policy, and thus he cannot establish the element of breach for his breach-of-contract claim as a matter of law. His claim that he is entitled to a declaratory judgment stating that he is entitled to coverage likewise fails. We hold that the trial court properly granted summary judgment on these two claims.

## II. The language on the Texas Insurance Identification Card does not constitute a promise of coverage upon which Daugherty could have reasonably relied.

In his third issue, in support of both his claim that AmTrust breached its warranty for the insurance services provided to him and his promissory-estoppel claim, Daugherty asserts that he relied on the language on the Insurance Card and believed that it was a promise by AmTrust that it would provide liability coverage to him when he operated the covered vehicle identified on the Card. In his amended petition, Daugherty asserted that AmTrust's express representation to him on the Insurance Card that he was provided liability coverage as a "Named

16

Insured" constituted an express warranty and that he relied on this warranty as "a basis for the bargain." For Daugherty's promissory-estoppel claim, he similarly asserted that he relied to his detriment on the promise expressed on the Insurance Card that he was provided liability coverage as a "Named Insured."

Courts have identified the elements of a claim for breach of warranty for services as (1) the defendant sold services to the plaintiff; (2) the defendant made a representation to the plaintiff about the characteristics of the services by affirmation of fact, by promise, or by description; (3) the representation became part of the basis of the bargain, i.e., the plaintiff relied on it; (4) the defendant breached the warranty; and (5) the plaintiff suffered injury.[8] *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 886 & n.8 (Tex. App.—Dallas 2007, no pet.) (citing *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576-77 & n. 3 (Tex. 1991)); *Southwestern Bell Tel. Co. v. Marketing on Hold Inc.*, 308 S.W.3d 909, 921 (Tex. 2010) ("Breach of express warranty requires proof of some form of reliance."); *see also Methodist Hosp. v. Zurich Am. Ins. Co.*, 329 S.W.3d 510, 527 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (noting that although *Paragon* listed plaintiff's notification to defendant of breach as element, it cited cases in which notification was not expressly set forth as element).[9] In its summary-judgment motion, relying on federal-court cases applying Texas substantive law, AmTrust argued that Daugherty's breach-of-warranty claim fails because he cannot identify any

---

[8] Similarly, to recover on a claim for promissory estoppel, a plaintiff must show (1) a promise; (2) foreseeability of reliance upon the promise by the promisor; and (3) substantial reliance by the promisee to its detriment. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)).

[9] Because the possible element of notification by Daugherty is not at issue here, we need not decide whether plaintiff's notification of the defendant of the breach is an element. *See* Tex. R. App. P. 47.1.

affirmation or promise, separate from the policy, upon which he relied when purchasing the policy.[10] *See Brooks, Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Ins. Co.*, 832 F.2d 1358, 1375-76 & n.14 (5th Cir. 1987) (holding in DTPA case that "[t]he mere promise by an insurance company that it will defend is not an express warranty of performance. Instead, the promise of performance is simply a term of the contract which, when breached, gives rise to an action for contract damages."), *decision clarified on reh'g*, 832 F.2d 1378 (5th Cir. 1987) (clarifying holding related to implied warranty in light of subsequent substituted opinion by Texas Supreme Court). In other words, AmTrust argues that the promise that Daugherty asserts as the basis for his breach-of-warranty claim is merely the alleged promise to provide liability coverage and should be treated as a contract term, not an express warranty.

Courts have distinguished between conduct constituting a breach of contract and conduct constituting a breach of warranty. A breach of contract occurs when a party fails to deliver as promised; a breach of warranty occurs when the services received do not conform to the character and quality of the services promised. *Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 890-91 (Tex. App.—San Antonio 1996, writ denied); *see also FDP Corp.*, 811 S.W.2d at 576 (describing remedy for breach of warranty as available to buyer who has accepted services that are defective in some manner). Here, the alleged promise that Daugherty

---

[10] In its summary-judgment reply, AmTrust also asserted that Daugherty's promissory-estoppel claim fails because he lacks evidence of a promise that he relied upon when purchasing the policy for his company. *See Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 899 (Tex. App.—San Antonio 2002, no pet.) ("Promissory estoppel is not applicable to a promise covered by a valid contract between the parties; however, promissory estoppel will apply to a promise outside the contract."); *see also Stable Energy, LP. v. Kachina Oil & Gas, Inc.,* 52 S.W.3d 327, 336 (Tex. App.—Austin 2001, no pet.) ("If an alleged promise is part of a valid contract, the promisee cannot disregard the contract and sue for reliance damages under the doctrine of promissory estoppel." (citing *Guaranty Bank v. Lone Star Life Ins. Co.,* 568 S.W.2d 431, 434 (Tex. Civ. App.—Dallas 1978, writ ref'd n.r.e.))).

identifies does not "describe the attributes, suitability for a particular purpose, and ownership of what is sold"; instead, at most it identifies what is being sold—"minimum amounts of liability insurance required by the Texas Motor Vehicle Safety Responsibility Act for the specified vehicles and named insureds." *Chilton Ins.*, 930 S.W.2d at 891. It does not provide any details about the attributes or suitability for a particular purpose of what is being sold. Accordingly, the alleged promise to provide liability insurance to Daugherty as a named insured is a contract term, not an express warranty about the character and quality of coverage to be provided. Moreover, as explained above, the policy does provide liability insurance for the specified vehicles and for Daugherty as the Named Insured, even though it does not provide liability insurance for Daugherty as a driver.

In addition, as AmTrust pointed out in its summary-judgment motion, even if Daugherty were able to establish an affirmative representation or promise sufficient to support a cause of action for breach of warranty, his mistaken belief that he was covered because of the Insurance Card does not raise a fact issue on the element of his reliance on the representation or promise as part of the basis of the bargain. *Cf., e.g., Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.) (stating that absent specific misrepresentation by insurer or agent about insurance, "a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable" under DTPA or Insurance Code). Daugherty testified at his deposition that he did not remember any discussion with AmTrust or his insurance agent. The only representation about his liability coverage as a driver that is in evidence is the email from his insurance agent informing him that AmTrust required him to sign the Named Driver Exclusion because he did not have a valid driver's license.

19

Furthermore, in the same email, his agent informed him that he needed to let her know when his license became active so that she could put in a request to AmTrust "to add him on as an active driver." Daugherty produced no evidence that he ever did so. Instead, he offered deposition and affidavit testimony that he never reviewed any of his AmTrust insurance policies and only reviewed the Texas Insurance Identification Cards as evidence of his reliance on AmTrust's purported promise of liability coverage on the Insurance Card. This testimony is not sufficient to raise a genuine issue of material fact on Daugherty's alleged reliance on the Insurance Card. "An insured has a duty to read the policy and, failing to do so, is charged with knowledge of the policy terms and conditions." *Ruiz v. Government Emps. Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.—El Paso 1999, no pet.). When Daugherty purchased his policy in 2016, he knew or should have known that he did not have liability coverage as a driver because of the Named Driver Exclusion endorsement that AmTrust required him to sign before issuing the policy. He further knew or should have known that he had never requested that AmTrust add him as an active driver as his agent had informed him he would need to do.

We hold that Daugherty has not presented evidence that raises a genuine issue of material fact on his breach-of-warranty and promissory-estoppel claims. We overrule his third issue.

### CONCLUSION

Having overruled Daugherty's three issues presented, we affirm the trial court's summary judgment.

_____

Gisela D. Triana, Justice

20

Before Justices Triana, Kelly, and Crump

Affirmed

Filed:   October 31, 2025